**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**AMY H. TANG,**

     **Plaintiff,**

**v.**                                   **Civil Action No.: 2:20cv575**

**EASTERN VIRGINIA MEDICAL SCHOOL,**

     **Defendant.**

## DEFENDANT EASTERN VIRGINIA MEDICAL SCHOOL'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Eastern Virginia Medical School ("EVMS"), by counsel, pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and Rule 7 of the Local Rules of the Federal District Court for the Eastern District of Virginia, submits the following memorandum in support of its Motion to Dismiss Counts I through XI of Plaintiff Dr. Amy Tang's ("Plaintiff" or "Dr. Tang") Amended Complaint[1]. Dkt. No. 9 (the "Complaint" or "Compl.").

## BACKGROUND

On November 18, 2020, Dr. Tang filed her initial Complaint in the United States District Court for the Eastern District of Virginia, Norfolk Division alleging eight causes of action against EVMS. Dkt. No. 1. On January 20, 2021, EVMS filed both an Answer to the initial Complaint and a Motion to Dismiss the Complaint in its entirety pursuant to FRCP 12(b)(6). *See* Dkt. Nos 5-6. On February 3, 2021, Dr. Tang filed an Amended Complaint, asserting the same allegations and violations raised in her initial Complaint, and added three new counts asserting that EVMS violated

---

[1] As required in 12(b)(6), EVMS has, where appropriate, adopted Dr. Tang's factual allegations as set forth in her Amended Complaint. EVMS reserves the right to contest any of the factual allegations if this matter proceeds in any form.

the Civil Rights Act of 1866, 42 U.S.C. § 1981's ("§ 1981") provisions against disparate treatment discrimination, pattern and practice discrimination, and retaliation. Complaint[2]. Pursuant to this Court's February 16, 2021 Order (Dkt. No. 12), EVMS files its Motion to Dismiss the Amended Complaint.

Dr. Tang was hired as a tenure-track Associate Professor at EVMS in 2010, and she became a tenured faculty member in 2012. In late 2018 into early 2019, an interpersonal conflict arose between Dr. Tang and a female PhD student (the "PhD Student")[3] that Dr. Tang supervised concerning the PhD student's dissertation and Dr. Tang's inappropriate behavior as the student's supervisor. Compl. ¶¶ 14-15. This action arises from (1) Dr. Tang's unfounded complaint to EVMS that the PhD Student attempted to misappropriate her "trade secrets" when the PhD Student included certain research data on a science poster outlining her dissertation topic, (2) EVMS's investigation and conclusion that the student had not misappropriated any trade secrets, and (3) Dr. Tang's inability or unwillingness to accept the results of EVMS's thorough investigations all of which occurred at the behest of Dr. Tang. Compl. ¶¶ 14-18, 23-28.  For the reasons that follow, Dr. Tang's Complaint should be dismissed pursuant to FRCP 12(b)(6), because she has failed to state actionable claims for disparate treatment, retaliation, or pattern and practice discrimination in violation of Title VII or § 1981 (Counts I-VI), violation of the Defend Trade Secrets Act (Count VII), violation of the Virginia Uniform Trade Secrets Act (Count VIII), statutory and common law conspiracy (Counts IX - X), or breach of contract ( Count XI).

---

[2] While Plaintiff has added new § 1981 claims, she has made no changes to the original allegations that would circumvent EVMS's original Motion to Dismiss Arguments as to her originally filed eight count Complaint. *See* **Exhibit A**.
[3] PhD students are employees of EVMS.

## ARGUMENT

**A.    Dr. Tang's Complaint Fails to State Claims for Relief and Should be Dismissed pursuant to Rule 12(b)(6).**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff is obligated to provide "grounds showing entitlement to relief," including "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A plaintiff's pleading must, at minimum, "allege facts sufficient to state all the elements of [its] claim." *Bass v. E. I. DuPont de Nemours & Co*., 324 F.3d 761, 765-766 (4th Cir. 2003). Further, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level…." *Twombly*, 550 U.S. at 555.  A complaint can only withstand a motion to dismiss if it contains plausible factual allegations that demonstrate something more than the "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a court evaluating a defendant's motion to dismiss must assume that all facts in the complaint are true, the court need not accept unsupported legal allegations. *Revene v. Charles Cty Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Nor must it accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**B.    Dr. Tang Fails to State a Claim for Disparate Treatment under both Title VII (Count I) and § 1981 (Count II) Against EVMS.**

**i.    Dr. Tang's disparate treatment claim under Title VII is time barred.**

Dr. Tang's disparate treatment claim is time-barred and thus not actionable under Title VII. Specifically, because the alleged adverse employment actions in paragraphs 17, 18, and 20 of the Complaint occurred prior to May 21, 2019 (more than 300 days before Dr. Tang filed her EEOC Charge), the Complaint fails to satisfy the necessary adverse employment action element of a

prima facie disparate treatment claim. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). Under Title VII, an EEOC charge "*shall be filed* within [300] days *after the alleged unlawful employment practice occurred*." §2000e-5(e)(1) (emphasis added). As the United States Supreme Court has established:

> "Shall" makes the act of filing a charge within the specific time period **mandatory**. "Occurred" means that the practice took place or happened in the past. The requirement, therefore, that the charge be filed "after" the practice "occurred" tells us that a litigant has up to 180 or 300 days after the unlawful practice happened to file a charge with the EEOC.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (internal citations and quotations omitted) (emphasis added). For statute of limitations purposes, a discrete "discriminatory act 'occurred' on the day that it 'happened.' A party, therefore [in Virginia], must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Id*. at 2070-71. The Supreme Court has repeatedly interpreted the term practice to apply to a discrete act or single "occurrence," even when it has a connection to other acts. *Id*.

The four elements of a prima facie case of disparate treatment discrimination claim that does not involve termination of employment are: (1) the plaintiff is a member of a protected class, (2) the plaintiff is qualified for the position, (3) the plaintiff suffered adverse employment action, and (4) an employee not in the protected class was treated more favorably[4]. *James*, 368 F.3d at 375. Because Dr. Tang did not timely file her EEOC Charge of Discrimination, she cannot meet prong three of the prima facie case of disparate treatment. *Id*.

---

[4] As discussed *infra* in Section D.ii., Dr. Tang failed to exhaust her administrative remedies under Title VII as to the two male, non-Chinese alleged comparators in paragraph 19b and 19d in the Complaint because she did not include allegations of more favorable treatment with respect to these individuals in her Charge. *Martin v. Merck & Co*., 446 F. Supp. 2d 615, 632–33 (W.D. Va. 2006) ("When a plaintiff alleges discrete acts of discrimination, as is the case in a disparate treatment claim, the plaintiff is required under Title VII to file an EEOC charge for each such discrete act."); *See Harris v. Rumsfeld*, 428 F.Supp.2d 460, 470 (E.D.Va.2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

Dr. Tang alleges that she suffered from the following discrete adverse employment actions, all of which took place prior to May 21, 2019 (300 days before she filed her EEOC Charge on March 16, 2020): (1) EVMS "removed [her] from [the PHD] student's dissertation committee, all the while continuing to permit the student to misappropriate [Dr. Tang's] intellectual property" (Compl. ¶ 17); and (2) "EVMS reprimanded [her] for opposing the student's misconduct and the theft of [her] intellectual property including her trade secrets." Compl. ¶ 18[5].

First, EVMS removed Dr. Tang from the alleged student's dissertation committee on May 8, 2019 due to her unrelenting, inappropriate behavior towards the student. Exhibit B (May 8, 2019 Letter Removing Plaintiff from Dissertation Committee)[6].  Second, EVMS reprimanded Dr. Tang on May 13, 2019, also for nondiscriminatory reasons. Exhibit C (EEOC Charge); Exhibit D (May 13, 2019 Written Reprimand Letter). All of these incidents that Dr. Tang alleges in support of her disparate treatment claim fall outside of the 300-day period during which she was required to file a charge of discrimination. Accordingly, because the alleged adverse employment actions necessary to sustain a claim for disparate treatment are time-barred, Dr. Tang has failed to exhaust her administrative remedies and Count I should be dismissed with prejudice.

> **ii.** **Dr. Tang fails to allege the necessary elements of a prima facie disparate treatment claim under both Title VII and § 1981.**

In addition, Dr. Tang has failed to state a claim under both Counts I (Title VII disparate treatment) and II (§ 1981 disparate treatment) because the incidents alleged in paragraph 17 (removal from the PhD Student's dissertation committee), paragraph 18 (receiving a written

---

[5] Dr. Tang appears to repeat this allegation in paragraph 20 when she asserts that she was "discriminatorily disciplined and had her intellectual property misappropriated." Compl. ¶ 20.

[6] "[This Court] may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

reprimand), and paragraph 24 (receiving a negative performance evaluation) do not constitute adverse employment actions under either Title VII or § 1981. *Honor v. Booz-Allen & Hamilton, Inc.,* 383 F.3d 180, 189 (4th Cir. 2004); *Shetty v. Hampton Univ.*, No. 4:12CV158, 2014 WL 280448, at \*9 (E.D. Va. Jan. 24, 2014); *Cepada v. Bd. of Educ. of Baltimore Cty.*, 814 F. Supp. 2d 500, 510 (D. Md. 2011) ("To establish a *prima facie* disparate treatment claim under Title VII or § 1981, the plaintiff must show…adverse employment action.") (*citing White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir.2004)). For example, in *Shetty*, the Court held the following:

> [a]t the hearing and throughout his brief in opposition, Dr. Shetty contends he suffered three adverse employment actions, all of which the Court finds either fails to constitute a cognizable adverse employment action or fails to rise to the level of having a significant detrimental effect on the terms and conditions of his employment: (1) his reduction from a twelve month employee to nine month employee, and thus, a lower salary; (2) his removal from two research courses, the kinesiology course, and the anatomy course; and (3) Dr. Williams' performance evaluation score of 49, which eventually led to the [post-tenure review] and [performance improvement plan].

No. 2014 WL 280448, at \*9.

Like the plaintiff in *Shetty*, none of the allegations that Dr. Tang alleges in her Complaint rise to the level of adverse employment actions because such ordinary business actions did not have a significant detrimental effect on the terms and conditions of her employment, such as an actual reduction in her salary or loss of tenure. *Id*. Accordingly, because suffering an adverse employment action is a necessary element of both a § 1981 and Title VII disparate treatment claim, Dr. Tang has failed to state a claim under both Counts I and II.

### C.    Plaintiff Fails to State a Claim for Retaliation under both Title VII (Count III) and § 1981 (Count IV) Against EVMS.

Dr. Tang alleges that following her first complaint of discrimination in May 2019 and the filing of her EEOC Charge in March 2020, she suffered from the following retaliatory acts:

EVMS retaliated against her by denying her grievance of its reprimand of her in August 2019, giving her a negative performance evaluation in August 2019 thereby reducing the salary she would have otherwise received, denying her grievance of her performance evaluation in November 2020, and continuously steering students away from courses and mentorship.

Compl. ¶ 24.

### i.   The retaliatory acts alleged by Dr. Tang are time-barred under Title VII.

Despite Dr. Tang's attempt to cure the fatal defects in her initial Complaint by injecting additional § 1981 claims into her Amended Complaint (*compare* Dkt. No. 1, ¶ 21 *with* Dkt. No. 9, ¶ 24), she has added nothing to the Amended Complaint to get around the fact that the above alleged discrete retaliatory acts took place prior to May 21, 2019 and are thus not actionable under Title VII because they occurred more than 300 days before Dr. Tang filed her EEOC Charge. *See Nat'l R.R. Passenger Corp.* 536 U.S. at 105. Title VII "precludes recovery for ***discrete acts*** of [sic] retaliation that occur outside the statutory time period." *Id* (emphasis added). As discussed in Section B.i., *supra*, "Section 2000e-5(e)(1) requires that a Title VII plaintiff file a charge with the [EEOC] either 180 or 300 days 'after the alleged unlawful employment practice occurred.'" *Id*. at 104-105.

A Title VII Plaintiff may not recover for related discrete retaliatory acts unless "the acts are ***independently*** discriminatory and charges addressing those acts are themselves timely filed." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113 (emphasis added)[7]. "Th[e] Court has also held that discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id* at 112. In her EEOC Charge, Dr. Tang alleges that she complained of "racism in

---

[7] To establish a prima facie case of retaliation, a plaintiff must allege the following: "(1) [s]he engaged in protected conduct, (2) [s]he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012); *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998).

May 2019" and that EVMS then "issued [her] a letter of reprimand on May 13, 2019." Ex. C. Such acts are not recoverable under Title VII because, according to Dr. Tang's EEOC Charge, she made her complaint of alleged discrimination prior to May 21, 2019, outside of the 300-day filing requirement. *See* Ex. C, EEOC Charge ("I complained that the actions were based on racism in May 2019. [EVMS subsequently] misappropriate[ed] my research and issued me a letter of reprimand on May 13, 2019"). Accordingly, she has failed to exhaust her administrative remedies on her retaliation claim, because her alleged protected activity (the alleged complaint regarding discrimination), a necessary element of a prima facie retaliation claim, is time-barred. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113.

### ii. Dr. Tang is precluded from Title VII recovery for discrete acts of retaliation that she did not allege in her EEOC Charge.

Even if this Court finds that the retaliatory acts alleged by Dr. Tang occurred within the 300-day period prior to filing her EEOC Charge, she has failed to exhaust her administrative remedies for all but one of these alleged discrete acts of retaliation because they are not included in her EEOC Charge. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) ("If the plaintiff's Title VII claims exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.") (internal citations and quotations omitted). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" that must be included within the scope of a plaintiff's EEOC Charge to constitute an actionable unlawful employment practice under Title VII. *Nat'l R.R. Passenger Corp.* 536 U.S. at 113; *see also Balas*, *v. Huntington Ingalls Indus., Inc.*, No. 2:11CV347, 2011 WL 4478864, at *5 (E.D. Va. Sept. 26, 2011) ("because termination and failure to promote are viewed as discrete acts, Balas's

claim that she was denied promotions in retaliation for her complaints was not within the scope of her EEOC charge, **which only objected to her termination**") (emphasis added).

The Complaint alleges the following retaliatory acts that are not alleged in Dr. Tang's EEOC Charge: (1) that EVMS gave her a negative performance evaluation and (2) that EVMS denied her grievance of her negative performance evaluation. Compl. ¶ 24. As discussed B.iii *supra*, a negative performance evaluation and a grievance of that performance evaluation do not constitute adverse employment actions as a matter of law. Even if this Court were to find that Dr. Tang's negative performance evaluation and the grievance of the negative performance evaluation constitute adverse employment actions (they do not), neither were included in her EEOC Charge. Accordingly, these alleged retaliatory acts are not actionable as a matter of law. *See Balas v. Huntington Ingalls Indus., Inc.,* 711 F.3d 401, 407 (4th Cir. 2013) ("In any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge.").

### iii. Dr. Tang's claims for retaliation under § 1981 and Title VII both fail because she did not suffer any adverse employment action.

As discussed in Section B.iii *supra*, Dr. Tang's negative employment evaluations do not constitute adverse employment actions under either Title VII or 1981[8]. *Honor*, 383 F.3d at 189. ("Honor's remaining allegations involve a negative employment evaluation he received and the fact that he was ostracized by certain employees. Neither claim rises to the level of an adverse employment action."); *Barcliff v. N. Carolina League of Municipalities*, No. 5:10-CV-244-D, 2011

---

[8] Again, to the extent that Dr. Tang attempts to use the same allegations purportedly supporting her § 1981 retaliation claim (Count IV) to support her § 1981 disparate treatment claim (Count II), then her § 1981 disparate treatment claim also fails because it requires that plaintiff suffer an adverse employment action. *See White*, 375 F.3d at 295.

WL 3290578, at *3 (E.D.N.C. Aug. 1, 2011) ("Adverse employment action is required to state a claim of…retaliation under Title VII and section 1981.").

Dr. Tang has failed to state a claim for retaliation stemming from her negative performance evaluation and EVMS's denial of her grievance of the negative performance evaluation because such ordinary business actions are not adverse employment actions as a matter of law. *Shetty*, 2014 WL 280448, at * 17 (finding no retaliation based on a review of a performance evaluation because, despite the employee's disappointment in the result, the plaintiff failed to "suggest[] the University took any action, other than initiating the standard [post-tenure review] process that occurs once a professor receives a low performance evaluation."). For these reasons, Counts III and IV of Plaintiff's Complaint must be dismissed with prejudice. *Barcliff*, 2011 WL at *4 (dismissing § 1981 retaliation claim stemming from negative performance evaluation where plaintiff's complaint did "not allege that she was terminated, demoted, or suffered a reduction in pay due to her September 2008 performance evaluation.").

    **D.**    **Plaintiff Fails to State a Claim for Pattern and Practice Discrimination under both Title VII (Count V) and § 1981 (Count VI) Against EVMS.**

        **i.**    **Dr. Tang cannot assert a pattern or practice claim under either Title VII or § 1981 as a non-class action plaintiff.**

"The Fourth Circuit has stated clearly that non-class action plaintiffs may not assert a pattern and practice claim." *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 479 (E.D. Va.), *aff'd*, 188 F.3d 501 (4th Cir. 1999); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 759 (4th Cir.1998) *vacated on other grounds*, 527 U.S. 1031 (1999) ("[I]ndividuals do not have a private, non-class cause of action for pattern or practice discrimination under § 1981 or Title VII."); *Whitehurst v. Sebelius*, No. CIV. WDQ-11-3092, 2012 WL 3116142, at *5 (D. Md. July 26, 2012). In her Complaint, Dr. Tang raises both a Title VII and § 1981 pattern and practice discrimination

claim on behalf of herself and no one else. Accordingly, Counts V and VI "must be dismissed because a non-class plaintiff may not pursue a pattern or practice claim" under either Title VII or § 1981 as a matter of law. *Id.*

> ii.    **In the alternative, Dr. Tang fails to allege sufficient facts to state a claim for pattern and practice discrimination under Title VII.**

Even assuming that Dr. Tang, a non-class action plaintiff, could proceed individually with a pattern and practice claim under either Title VII or § 1981[9], her Complaint fails to allege sufficient facts to state a prima facie claim for pattern and practice discrimination under both statutes. "[A] prima facie Title VII violation may be established by policies or practices that are neutral on their face and in intent but that nonetheless discriminate in effect against a particular group." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 349 (1977). To meet this showing, an employee must allege a standard operating procedure. *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 875-76 (1984) ("Proving isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case of a pattern or practice of discrimination; rather it must be established by a preponderance of the evidence that 'racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice.'") (*citing Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 349, *overruled on other grounds* (1977)). *Andreana v. Virginia Beach City Pub. Sch.*, *abrogated on other grounds,* No. 2:17-CV-574, 2018 WL 2182297, at *4 (E.D. Va. May 9, 2018) ("[t]o demonstrate pattern or practice of discrimination, [it] must be shown that 'discrimination was the [employer's] standard operating procedure. Such proof requires 'more than the mere occurrence of isolated[,] accidental or sporadic

---

[9] *See White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004) (requiring the same elements be shown to establish a prima facie case of racial discrimination whether under Title VII or § 1981).

discriminatory acts.' Rather, the discrimination must have been the employer's regular practice as opposed to an unusual occurrence.") (citing *Teamsters*, 431 U.S. at 325–26 n.15 (1977))

Dr. Tang has failed to state a pattern and practice claim because the isolated events alleged in her Complaint, including the unrelated, discrete instances of alleged discrimination against Chinese and Asian employees at EVMS (*See* Compl. ¶¶ 19 – 21), do not rise to the level of a regular pattern or practice that discriminated against Asian or Chinese Americans. Accordingly, Counts V and VI in the Complaint should be dismissed.

### iii. Dr. Tang has failed to exhaust her administrative remedies with respect to her Title VII pattern and practice discrimination claim.

Like her disparate treatment and retaliation claims, Plaintiff has failed to exhaust her administrative remedies with respect to her pattern and practice claim in Count V, because her EEOC Charge alleges two isolated occurrences that do not rise to the level of pattern or practice discrimination under Title VII. As previously noted, an individual alleging discrimination in violation of Title VII must first file an administrative complaint with the EEOC within 300 days of the unlawful act. *Supra*; 42 U.S.C.A. § 2000e–5(b), (e)(1); *see also Taylor v. Va Union Univ.*, 193 F.3d 219, 239 (4th Cir. 1999) (holding that a claim will be procedurally barred if the factual allegations in the administrative charge are too vague to support the claim in subsequent litigation). This standard applies with equal force to the specific incidents that serve as the basis for an individual's claim of pattern and practice administration. As the Fourth Circuit set forth in *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005), "a plaintiff fails to exhaust his administrative remedies where [his] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *See also Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) ("when claims in [a] court

complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred." (citing *Chacko*, 429 F.3d at 508-10)).

Like the plaintiff's allegations in *Chacko*, the allegations listed in paragraphs 19 – 21 of the Complaint, which constitute the sole support for Dr. Tang's allegations of pattern and practice discrimination, reference different timeframes, actors, and discriminatory conduct than the those in her EEOC charge. Therefore, Plaintiff's pattern and practice discrimination claim is barred.

At least half of the above alleged incidents concerning the non-Chinese faculty members in paragraphs 19 – 21 are missing from Dr. Tang's EEOC Charge. *Compare* EEOC Charge at 2 (citing incidents of a Caucasian faculty member sexually harassing students and another Caucasian faculty member harassing a postdoctoral fellow) *with* Compl. ¶ 19 (citing incidents of a Caucasian male faculty member sexually harassing his students; a Caucasian male and non-Chinese faculty member harassing his students; a Caucasian, male and non-Chinese faculty member sexually harassing a postdoctoral fellow; and a Caucasian, male, and non-Chinese faculty member abusing other employees).   To the extent that Dr. Tang seeks to argue that these allegations in her Complaint but not in her EEOC Charge support her pattern and practice discrimination claim, she is barred from doing so because she has failed to exhaust her administrative remedies with respect to these discrete allegations. *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) ("Where, as here, the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.") (citing *EEOC v. General Electric Co.*, 532 F.2d 359, 366 (4th Cir. 1976)).

Dr. Tang then alleges that EVMS "has a pattern and practice of discriminating against Chinese national origin faculty and employees," *id.* ¶ 21, including:

> a.      In 2009, a Chinese-American faculty member pursued national origin discrimination charges with the EEOC because of EVMS's discrimination.
> b.      In 2011, EVMS was sued under Title VII by a Chinese-American research associate because of national origin discrimination.
> c.      In January 2019, a Chinese-American faculty member left EVMS because of severe and pervasive discrimination on the basis of race and national origin.

*Id.* These discrete allegations in paragraph 21 are insufficient to support Dr. Tang's conclusory allegation that "[d]iscrimination on the basis of race and national origin is part of EVMS's standard practices." *Id.* at 22. In addition, Dr. Tang's claim that in January 2019 a Chinese-American faculty member left EVMS because of severe and pervasive discrimination on the basis of race and national origin, has no factual support in the Complaint and, therefore, is pure speculation that does not have to be accepted as factual support under the motion to dismiss review standard. *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Moreover, and fatal to Dr. Tang's pattern and practice claim, is the fact that all of the above allegations of EVMS's "pattern and practice of discriminating against Asian and Chinese national origin faculty employees" are absent from her EEOC Charge, and she has thus failed to exhaust her administrative remedies with respect to these discrete acts. In her EEOC Charge, Dr. Tang vaguely states that several "Asian, female faculty" members have experienced discrimination. EEOC Charge at 2. In the Complaint, however, she broadens the scope of injured individuals from Asian, female faculty members to "Asian, Chinese national origin, and ethnic Chinese faculty and employees," Compl. ¶ 21, and, instead of vaguely referring to faculty members "leaving EVMS in the past several years because of the discriminatory work environment," the Complaint identifies three separate incidents, occurring in 2009, 2011, and 2019, respectively, where Chinese-

American faculty and employees allegedly either brought charges against EVMS or left the institution. *Id.*

Because the referenced timeframes, individuals, and discriminatory acts alleged in paragraph 21 of her Complaint were not alleged in her EEOC Charge, Plaintiff has failed to exhaust her administrative remedies. Accordingly, Dr. Tang's Title VII pattern and practice discrimination claim fails as a matter of law. *Chacko*, 429 F.3d at 506 ("We hold that a plaintiff fails to exhaust his administrative remedies where, as here, his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit."); *Cf. E.E.O.C. v. Burlington Medical Services, Inc.*, 536 F.Supp.2d 647, 659 (E.D.Va. 2008) (considering facts regarding conduct occurring outside the statute of limitations solely because of "the EEOC's ability to secure enforcement of Title VII on behalf of the public is primarily served through its ability to secure injunctive relief.").

Furthermore, any dates of discrimination occurring prior to May 21, 2019 are time-barred, because they occurred more than 300 days before Plaintiff filed her EEOC Charge. Plaintiff has failed to exhaust her administrative remedies with respect to any alleged incidents of Title VII pattern and practice discrimination taking place after December 12, 2019, because her EEOC Charge specifies that the discrimination only occurred between a specific date range: October 12, 2018 to December 12, 2019. EEOC Charge at 1. Two of the three the alleged incidents of discrimination against Chinese-American faculty members listed in the Complaint are alleged to have occurred in 2009 and 2011, respectively, well outside of the range of dates specified by Plaintiff in the EEOC Charge and any reference to these incidents should be precluded from forming the basis of Plaintiff's pattern or practice discrimination claims.

Lastly, the only remaining discrimination allegations concern Plaintiff's personal experience, which do not rise to the level of pattern and practice discrimination as a matter of law. It is well-settled that, "[p]roving isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case of a pattern or practice of discrimination; rather it must be established by a preponderance of the evidence that 'racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice.'" *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 875–76 (1984); *see Dennis,* 55 F.3d at 156–57 (finding that alleged discrimination did not establish broader pattern and practice); *Muhammad v. Giant Food Inc.*, 108 Fed. Appx. 757, 763–64, 2004 WL 1795358, at *4 (4th Cir. 2004) ("Simply alleging the existence of a pattern or practice of discrimination does not ... automatically give rise to the [. . .] presumption—the presumption arises only when the evidence establishes that a pattern or practice of discrimination exists."); *Williams v. Aluminum Co. of Am.*, 457 F. Supp. 2d 596, 607 (M.D.N.C. 2006) ("Mr. Johnson has not provided any evidence that discrimination is Alcoa's "standard operating procedure" and thus is not entitled to a presumption that he has been discriminated against."). Accordingly, because the Complaint is bereft of allegations that support Plaintiff's claims of pattern and practice discrimination, this claim should be dismissed.

The alleged 2009, 2011[10], and 2019 pattern and practice incidents of discrimination against Chinese-American faculty and employees occurred well over 300 days before Dr. Tang filed her EEOC Charge and, therefore, have run afoul of the statute of limitations for bringing EEOC charges. 29 C.F.R. § 1601.13(a)(3)(ii)(A) ("[T]he charge is deemed to be filed with the

---

[10] Even if plaintiff could maintain a § 1981 pattern and practice claim without a class (she cannot), these alleged incidents all took place well before the applicable limitations period of four years. *Williams v. Aluminum Co. of Am.*, 457 F. Supp. 2d 596, 608 (M.D.N.C. 2006).

Commission upon receipt of the document. Such filing is timely if the charge is received within 300 days from the date of the alleged violation.").

### iv. Dr. Tang cannot assert the contractual rights of non-parties to support her pattern and practice claim under § 1981.

"Any § 1981 claim . . . must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 470 (2006). Further, this court has held that a plaintiff may not assert contractual rights pursuant to § 1981 on behalf of individuals not party to the matter. *See Mazaiwana v. Progressive N. Ins. Co.*, No. 3:19-CV-444, 2020 WL 1482592, at *4 (E.D. Va. Mar. 27, 2020). ("Mazaiwana contends that Progressive's conduct amounts to national origin discrimination against Odeh. Mazaiwana, however, cannot litigate the rights of Odeh, a nonparty to this case. Thus, to the extent that Mazaiwana asserts a discrimination claim on behalf of Odeh, Mazaiwana fails to state a claim.") (citing *Guggenheimer Health & Rehab. Ctr. v. Cary*, No. 6:17-cv-79, 2018 WL 1830736, at *2 (W.D. Va. Apr. 17, 2018) ("The default rule in federal court is that one may litigate only his own rights and interests, not those of others.")).

To establish Title VII and § 1981 pattern and practice discrimination claims, Dr. Tang alleges the same facts in her Amended Complaint as she did in her initial Complaint. These allegations center on the contractual agreements between nonparties to this case and EVMS. *See* Amended Complaint at paragraphs 19 & 21. Indeed, Dr. Tang does not even assert that the other unnamed faculty mentioned in the Amended Complaint had a contractual relationship or duty with respect to EVMS. Accordingly, Dr. Tang has failed to allege pattern and practice violations under § 1981 (or Title VII).

For these reasons Dr. Tang has failed to state a claim for pattern and practice discrimination in violation of Title VII or in violation of § 1981 and, therefore, Counts V and VI in the Complaint should be dismissed with prejudice[11].

### F.   Plaintiff Fails to State a Claim for Relief under the Defend Trade Secrets Act Against EVMS in Count VII of Her Complaint.

Plaintiff has failed to state a claim under the Defend Trade Secrets Act ("DTSA"), which affords owners of trade secrets protection against the "unauthorized use of the trade secret by those to whom the secret has been confided under the express or implied restriction of nondisclosure or nonuse." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475, (1974) (emphasis added). Here, Dr. Tang has failed to adequately allege that EVMS or the student misappropriated a trade secret.

To establish an action under the DTSA, a plaintiff must satisfy three elements: "(1) it owns a trade secret; (2) the trade secret was misappropriated; and (3) the trade secret implicates interstate or foreign commerce." *Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D. Va. 2018) (citing § 1836).

The term "trade secret" is defined in 18 U.S.C. § 1839(3) to constitute:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored,

---

[11] Because § 1981 claims are limited to racial, instead of national origin, discrimination, all of Dr. Tang's § 1981 claims should be dismissed with prejudice for failure to state a claim. *Jadali v. Alamance Reg'l Med. Ctr.*, 399 F. Supp. 2d 675, 682 (M.D.N.C. 2005), *aff'd sub nom. Jadali v. Almance Reg'l Med. Ctr., Inc.*, 167 F. App'x 961 (4th Cir. 2006) (nowhere does plaintiff attribute defendant's motives in denying privileges to anything that could be construed to be 'race.' Instead, his arguments all turn on country of origin, a basis which the Supreme Court stated in [*St. Francis College v. Al–Khazraji*, 481 U.S. 604, 613 (1987)] was not covered by § 1981.") Dr. Tang's claims are devoid of any allegations relating to her race. Instead, she pins her entire argument on EVMS's alleged discrimination against her country and continent of origin, China and Asia, respectively. *See* Amended Complaint ¶¶ 19(a)-(d) (describing treatment of "Caucasian, male" and "non-Chinese faculty") *and see id.* 20(a)-(c) (describing treatment of "Chinese-American faculty.").

> compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

*S-E-A, Ltd. v. Cornetto*, No. CV JKB-18-1761, 2018 WL 3996270, at *2 (D. Md. Aug. 21, 2018) (citing "[t]he crucial characteristic of a trade secret is secrecy rather than novelty." *Dionne v. Southeast Foam Converting & Packaging, Inc.,* 240 Va. 297, 302 (1990)).

Here, Plaintiff's claims fail, in part, because she neglects to allege how EVMS or its student misappropriated the trade secret.  To establish misappropriation, Plaintiff must allege: "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or [ ] disclosure or use of a trade secret of another without express or implied consent." § 18 U.S.C. § 1839(5). "The 'disclosure or use' category requires that the discloser or user (i) "used improper means to acquire knowledge of the trade secret," (ii) "knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who had used improper means to acquire the trade secret," and was "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret," or (iii) "knew or had reason to know that the trade secret was a trade secret," and was "acquired by accident or mistake." *Orbital*, 306 F. Supp. at 854 (citing § 1839(5)).

Based on Plaintiff's own allegations, she and the student worked together on "the existence and facts of the trade secret," namely—"the exploitation and use of ethylenediaminetetraacetic [sic] acid (EDTA) for anti-NFxB (a protein complex that controls transcription of DNA, cytokine production and cell survival), anti-inflammatory, and anti-septic treatments." Compl. ¶ 11.

Plaintiff fails to cite any provisions of the "invention disclosure form" that would bar EVMS from acquiring the trade secrets for the institution's use. Instead, the facts indicate that Plaintiff, who maintained a working relationship with both EVMS and her student, did not keep the trade secret from her students or EVMS. *See* Complaint ¶ 13. According to Plaintiff, despite taking some minimal measures to keep the information secret from individuals outside of EVMS, *see* Compl. ¶ 11, Plaintiff's research was generally known to individuals inside EVMS. This flaw is fatal to her DTSA claim. *See Secure Services Tech. v. Time and Space Processing*, 722 F.Supp. 1354, 1361 (concluding that the plaintiff's failure to protect a trade secret when it sold a machine to the government rendered the information ineligible for trade-secret protection); *McKay Consulting, Inc. v. Rockingham Mem'l Hosp.*, 665 F. Supp. 2d 626, 635 (W.D. Va. 2009) (finding no violation of the DTSA where the trade secret was "generally known" to other persons who could obtain economic value from its disclosure or use"). In sum, because none of Plaintiff's precautions were designed to prevent access to the trade secrets by students and EVMS, her allegations under the DTSA fail.[12]

---

[12] *See Secure Servs. Tech., Inc. v. Time & Space Processing Inc.*, 722 F. Supp. 1354, 1361 (E.D. Va. 1989) ("A comparison of this case with the precautions taken by the Acuson Corporation (Acuson) in *Acuson Corp. v. Aloka Co.,* 209 Cal.App.3d 425, 257 Cal.Rptr. 368 (6th Dist.1989) is instructive. In that case, Acuson claimed trade secret protection in processes used in its ultrasonic imaging equipment, a non-invasive medical diagnostic tool. Acuson took several precautions to prevent disclosure of these imaging processes: (i) the equipment was sold under a limited license for the internal software, (ii) sales persons and dealers were required to sign confidentiality agreements, and, (iii) internal padlocks were included in the equipment making it more difficult to examine the machinery. Even so, the *Acuson* court concluded that, while the precautions taken by Acuson were examples of what a manufacturer might do to prevent or inhibit others from reverse engineering its product, these precautions were not adequate under the Act to provide the ultrasonic imaging equipment with trade secret protection. Notwithstanding those precautions, reverse engineering remained an effective means of discovering Acuson's ultrasonic imaging process. The same is true here, as no precautions taken by SST precluded reverse engineering of the protocol variations; SST, through its own carelessness, failed to adequately protect its rights.").

Furthermore, neither EVMS nor the student used improper means to acquire knowledge of the trade secret.  "One who discovers another's trade secret properly, as, for example; by inspection or analysis of the commercial product embodying the secret, or by independent invention, or by gift or purchase from the owner, is free to disclose it or use it in his own business without liability to the owner." Restatement (First) of Torts § 757 (1939). Dr. Tang states, without any factual support, that by agreement with EVMS and by virtue of her creation of and ownership of trade secrets . . . [she] owns all of the intellectual property," Compl. ¶ 13, and both the student and EVMS were under independent duties to "maintain the secrecy and/or limit the use of the trade secrets." *Id.* at 14 and 15. But instead of detailing the facts surrounding how EVMS and/or the student came into possession of the trade secret or detailing which provisions of her agreement with EVMS it violated, Plaintiff merely alleges that the student committed "theft" of Plaintiff's intellectual property and that EVMS took no action to address or reverse the misconduct by the student. *Id.* ¶¶ 14, 17. These bald, conclusory allegations do not establish what exactly EVMS or the student acquired or that either did so improperly. *See contra Trans-Radial Sols., LLC v. Burlington Med., LLC*, No. 2:18-CV-656, 2019 WL 3557879, at *17 (E.D. Va. Aug. 5, 2019) ("Defendants acquired this information only by virtue of its alleged contractual relationship with TRS, which gave rise to a duty to maintain the secrecy of such trade secrets and to only use such secrets for the limited purpose of fulfilling its duties as the distributor of TRS's products.").

The facts alleged by Dr. Tang indicate that she authorized EVMS and the student to access and use the trade secrets, and they did not acquire the trade secret through circumstances giving rise to a duty to maintain the trade secret. *See* Compl. ¶¶ 13, 15-17.  The fact that the student derived value from co-analyzing research alongside Plaintiff flows from the student-teacher

relationship and does not constitute theft. Accordingly, Dr. Tang's DTSA violation claim should be dismissed with prejudice.

> **G.** **Plaintiff Fails to State a Claim for Relief under the Uniform Trade Secrets Act Against EVMS in Count VIII of Her Complaint.**

"The VUSTA's elements are similar to the DTSA and require a plaintiff to prove: (1) the existence of a 'trade secret'; and (2) the 'misappropriation' of that trade secret by the defendant. *Orbital*, 306 F. Supp. 3d at 855. Under VUTSA, a trade secret is "information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process," that "(1) derives independent economic value from not being generally known, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc*., 299 F. Supp. 2d 565, 574 (E.D. Va. 2004) (citing Va. Code § § 59.1–336.).

Just like under the DTSA, Plaintiff fails to allege misappropriation, an essential element to establishing a violation of the VUTSA. This failure renders Plaintiff's claims unactionable. To satisfy the misappropriation element, the plaintiff must show either (1) "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or  (2) "[d]isclosure or use of a trade secret of another without express or implied consent." Va.Code § 59.1–336.

Plaintiff cannot satisfy the first prong of misappropriation, because she provides no details about the acquisition, use, or disclosure of the alleged trade secret, merely noting that the student committed "theft" of Plaintiff's intellectual property, and EVMS took no action to address or reverse the misconduct by the student. Compl. ¶¶ 14, 17. Indeed, Dr. Tang's failure to allege ***how***[13]

---

[13] Further, despite mentioning that she had an agreement with EVMS, Plaintiff provides no information about which provisions of said agreement create a duty of nondisclosure or how that duty was breached. *See infra* Section H; *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165,

her alleged trade secrets were improperly appropriated or disclosed by EVMS or the student is fatal to her VUTSA claim. *See Synventive Molding Sols., Inc. v. Injection Molding Sys., Inc.*, No. 2:08-CV-136, 2009 WL 10678880, at *3 (D. Vt. Dec. 7, 2009) (finding no appropriation under Vermont law, after noting that Virginia construed misappropriation under a similar definition, where a party "allege[d] that it provided trade secrets to one or more of its customers in confidence, and that [another party] obtained them"); *Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352-FTM-29, 2013 WL 6332971, at *3 (M.D. Fla. Dec. 5, 2013) ("[P]laintiff's list of trade secrets does not adequately inform defendants what they supposedly misappropriated.").

Dr. Tang also fails to set forth enough facts to satisfy the second prong of the misappropriation element of a prima facie VUTSA claim. Despite claiming that EVMS "stole" her property, Plaintiff fails to allege any facts about EVMS' disclosure or use of the alleged trade secret. Like in *E. W., LLC v. Rahma*n, 873 F. Supp. 2d 721, 736 (E.D. Va. 2012), Plaintiff "fails to allege how [EVMS and the student] have used [or disclosed] this information." *Cf. All Bus. Sols., Inc. v. NationsLine, Inc.*, 629 F. Supp. 2d 553, 558–59 (W.D. Va. 2009) (finding no misappropriation where the Plaintiff made conclusory assertions about the disclosure of confidential information."). As with Dr. Tang's claims under the DTSA, her claim under the VUTSA also fails because she neglects to adequately allege that EVMS misappropriated any trade secrets.  Accordingly, Plaintiff's claim for the misappropriation of trade secrets pursuant to the UTSA should be dismissed with prejudice.

---

206–07, 788 S.E.2d 237, 260 (2016) ("There can be no misappropriation where acquisition, disclosure, and use of a trade secret have been expressly authorized by contract.").

**H.**   **Plaintiff Fails to State a Claim for Conspiracy under both Virginia Code § 18.2-499 (Count IX) and Virginia Common Law (Count X) Against EVMS in her Complaint.**

This Court should dismiss Counts IX and X of the Complaint because an entity can neither conspire nor combine with an agent under Virginia law, and Plaintiff's factual allegations establish that the PhD student was an agent of EVMS[14]. A civil conspiracy is "a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means." *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 616 (E.D. Va. 2005) (internal citations and quotations omitted). To state a claim for a violation of the business conspiracy statute, Va. Code Ann. § 18.2-499, a plaintiff must allege (1) a combination of two or more persons for the purpose of willfully and maliciously injuring a plaintiff's business, and (2) the resulting damage to the plaintiff. *Id.* at 617. "The doctrine of intracorporate immunity, however, recognizes that a conspiracy 'requires two or more persons and that, because a corporation and its agents comprise a single legal entity, they are legally incapable of conspiracy.'" *SecureInfo Corp.*, 387 F. Supp. at 616 (*quoting Lewin v. Cooke*, 95 F. Supp. 2d 513, 524 (E.D. Va. 2000), *aff'd*, 28 F. App'x 186 (4th Cir. 2002)); *NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1017 (E.D. Va. 2018) ("Virginia law makes clear that because a corporation and its agents are essentially one actor, 'a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility.'"). Under Virginia law, an "agent" is (1) subject to the control of the principal with regard to the work to be done and manner of performing it, and (2) the work has to be done on the business of the principal or for the principal's benefit. *Whitfield v. Whittaker Mem'l Hosp.*, 210 Va 176 (1969); *SecureInfo Corp.*, 387 F. Supp. at 616.

In her Complaint, Dr. Tang repeatedly alleges facts to establish an agency relationship between EVMS and the PhD student. Compl. ¶¶ 9, 15, 17, 27. Dr. Tang alleges that she is

"employed by EVMS" (Compl. ¶ 9) and that the PhD student "was under [her] direct supervision and control" (Compl. ¶ 15).   To illustrate EVMS's control with regard to the work done and performed by the PhD student, Dr. Tang alleges that

> EVMS ***took no action to address and reverse*** the misconduct by the student…***permitted*** the student to publish Plaintiff's trade secrets as a poster for a scientific meeting…***permitted*** the student to publish a dissertation misappropriating Plaintiff's intellectual property [and] ***allow[ed] and condon[ed]*** and/or assist[ed] the student in filing for United States patent protection as well as patent protection in other countries.

Compl. ¶ 17. Counts IX (Conspiracy under Va. Code § 18.2-499) and X (Conspiracy in Violation of Virginia Common Law) reallege all prior paragraphs "as if fully set forth herein." Compl. ¶¶ 69, 72. These allegations assert that EVMS controlled or at a minimum, had the power to control, the PhD student's conduct with respect to Dr. Tang's alleged intellectual property and trade secrets. *See Whitfield*, 169 S.E.2d at 567 (describing that control and benefit are elements of an agency relationship).

The allegations incorporated by reference into Counts IX and X further assert that Dr. Tang has an "agreement with EVMS" that governs her "creation and ownership of trade secrets and intellectual property…during ***her employment as a*** professor and ***researcher at EVMS***" and that the "PhD" student conspired with EVMS, in part, when she engaged in "***research*** misconduct." Compl. ¶¶ 13, 14. Accordingly, the Complaint alleges facts that the PhD student's misconduct was "done on the business of [EVMS] or for [EVMS's] benefit," and, therefore, that an agency relationship exists between EVMS and the PhD student. *Whitfield*, 210 Va at 169. *SecureInfo*

---

[14] EVMS is a legal entity that can raise an intracorporate immunity doctrine defense. *See Lewin v. Cooke*, 95 F. Supp. 2d 513, 525 (E.D. Va. 2000), *aff'd*, 28 F. App'x 186 (4th Cir. 2002) ("To adopt plaintiff's reasoning and hold that a joint response to a lawsuit filed against EVMS and its employees for official actions undertaken on behalf of the medical school removes defendants from the umbrella of intracorporate immunity would be to eviscerate the doctrine. Obviously, this court declines to do so.")

*Corp.*, 387 F. Supp. at 616. Counts IX and X in the Complaint are barred by the intracorporate immunity doctrine because EVMS cannot conspire with its agent and, therefore, should be dismissed pursuant to Rule 12(b)(6) as a matter of law. *NorthStar Aviation, LLC*, 332 F. Supp. at 1017 (granting motion to dismiss pursuant to Rule 12(b)(6) where plaintiff alleged that LLC conspired with its members). Accordingly, Plaintiff's conspiracy claims should be dismissed with prejudice.

## I.   Plaintiff Fails to State a Claim for Breach of Contract in Count XI of Her Complaint.

Finally, Dr. Tang's breach of contract claim also fails[15] to state a plausible claim for relief because it does not identify a written or oral agreement with EVMS, fails to plead the elements of a breach of contract claim, and does not identify any details that would fairly put EVMS on notice of the nature of the contractual claim against it or the grounds on which such claim is based.[16]

Dr. Tang makes the following conclusory allegations concerning an unspecified "agreement" with EVMS: (1) that she owned "all of the intellectual property" described in the Complaint "[b]y agreement with EVMS" and (2) that "EVMS entered into an agreement with [Dr. Tang] wherein EVMS assigned to her any and all rights it had in her intellectual property and trade

---

[15] The Complaint fails to satisfy the burdens of Rule 8 [of the Federal Rules of Civil Procedure] because [EVMS] does not have fair notice of what the…claim is and the grounds upon which it rests." *Curry v. Holmes, Enterprises, Inc.*, No. 3:10CV849-DWD, 2011 WL 1483741, at *3 (E.D. Va. Apr. 19, 2011) (internal citations and quotations omitted).

[16] Dr. Tang's failure to allege facts supporting her claim of a "contractual relationship" is also fatal to her § 1981 claims. *See Mazaiwana v. Progressive N. Ins. Co.*, No. 3:19-CV-444, 2020 WL 1482592, at *3 (E.D. Va. Mar. 27, 2020) ("Mazaiwana fails to allege facts showing that Progressive breached a legally enforceable obligation" because he "did not attach a copy of the policy to his complaint or cite any provisions of the policy that he contends Progressive breached. Thus, the Court cannot discern whether a legally enforceable obligation exists or whether Progressive breached that obligation."). Even though EVMS made Dr. Tang aware of this defect in her initial pleading (see Dkt No. 6 at pgs. 23-24), she has again neglected to allege in her Amended Complaint which provisions of a contract EVMS breached and she fails to attach a copy of the purported contract to the Amended Complaint. For this reason, each of her claims under § 1981 fail and should be dismissed with prejudice.

secrets." Compl. ¶¶ 13, 76.   Dr. Tang provides no other facts concerning the terms of the agreement. She does not identify or explain either her or EVMS's obligations under the agreement or whether she even performed her obligations under the agreement. Accordingly, Dr. Tang has failed to adequately plead the elements of a breach of contract claim as a matter of law. *See Curry v. Holmes, Enterprises, Inc.*, No. 3:10CV849-DWD, 2011 WL 1483741, at *4 (E.D. Va. Apr. 19, 2011) ("Without any facts supporting the existence of the loan, such as an agreement about and the specifics of the repayment terms, the Court cannot discern whether a 'loan' actually existed.").

Dr. Tang even fails to identify the specific contract provisions EVMS breached. While the Complaint alleges that "EVMS breached [the agreement assigning its intellectual property rights and trade secrets] by giving those rights to the [PhD] student, and facilitating / allowing the student to pursue patent protection for the intellectual property and trade secrets that belong to Plaintiff", it is devoid of any ***factual*** allegations concerning whether the agreement contained any terms imposing such obligations on EVMS. Compl. ¶ 77. From the face of the Complaint, EVMS cannot discern whether it has an agreement with Dr. Tang, let alone the terms of such agreement. Accordingly, Count XI of Plaintiff's complaint for breach of contract should be dismissed as a matter of law. *Langford v. Antero Res. Corp.*, No. 1:19CV178, 2020 WL 608285, at *3 (N.D.W. Va. Feb. 7, 2020) (holding that plaintiffs failed to adequately plead the elements of a breach of contract claim where the Complaint failed to "identify or explain the parties' obligations under the various contracts…fail[ed] to allege whether the [p]laintiffs have performed their obligations under the contracts, and fail[ed] to identify the specific contract provisions [defendant] breached.").

## **CONCLUSION**

For the reasons set forth herein, Defendant EVMS respectfully requests that this Court grant its motion to dismiss Counts I through XI in Plaintiff's Complaint.  If Dr. Tang's federal claims are dismissed (Counts I – VII) and should any of Dr. Tang's state claims survive (Counts VIII – XI), which they should not, EVMS respectfully requests that such state claims be dismissed without prejudice and then Dr. Tang can determine if she wants to refile the claims in the appropriate state court.

EASTERN VIRGINIA MEDICAL SCHOOL

By: _____/s/_____
David C. Burton (VSB No. 33178)
dburton@williamsmullen.com
Yiorgos L. Koliopoulos (VSB No. 93608)
gkoliopoulos@williamsmullen.com
WILLIAMS MULLEN, P.C.
222 Central Park Avenue, Suite 1700
Virginia Beach, VA  23462
Phone: (757) 499-8800
Fax: (757) 473-0395
*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2021, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notice to the following:

James R. Theuer, Esq.
jim@theuerlaw.com
James R. Theuer, PLLC
555 E. Main Street, Suite 1212
Norfolk, VA 23510
Counsel for Plaintiff
*Counsel for Plaintiff*

Duncan G. Byers, Esq.
dbyers@pwhd.com
Andrew J. Dean, Esq.
adean@pwhd.com
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Counsel for Plaintiff
*Counsel for Plaintiff*

By: _____/s/_____
David C. Burton (VSB No. 33178)
dburton@williamsmullen.com
WILLIAMS MULLEN, P.C.
222 Central Park Avenue, Suite 1700
Virginia Beach, VA  23462
Phone: (757) 499-8800
Fax: (757) 473-0395
*Counsel for Defendant*