IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

AMY H. TANG, )
    Plaintiff, )
)
    v. ) Civil Action No. 2:20cv575 (RCY)
)
EASTERN VIRGINIA )
MEDICAL SCHOOL, )
    Defendant. )
)

**MEMORANDUM OPINION**

This matter is before the Court on Eastern Virginia Medical School's Motion to Dismiss, (ECF No. 13.) The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant the Motion in part and deny the Motion in part.

**I. FACTUAL HISTORY**

Taking as true the facts alleged in the Amended Complaint for purposes of the instant motion,[1] (Am. Compl., ECF No. 9), the Court will recount the relevant background facts surrounding the claims of the plaintiff, Amy H. Tang ("Plaintiff"), against defendant Eastern Virginia Medical School ("Defendant").

Plaintiff is a female Asian-American of Chinese national origin and ethnicity employed by Defendant as a Professor of Cancer Biology. (*Id.* ¶¶ 1, 9.) On October 10, 2018, Plaintiff provided an invention disclosure to Defendant that contained trade secrets as defined by the Defend Trade

---

[1] In considering a motion to dismiss, a plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted).

1

Secrets Act and the Virginia Uniform Trade Secrets Act. (*Id.* ¶ 10.) Plaintiff owned and developed trade secrets, including treatments related to the exploitation and use of Ethylenediaminetetraacedic [sic] Acid ("EDTA") for anti-NF$_k$B, anti-inflammatory, and anti-septic treatments. (*Id.* ¶ 11.) Plaintiff took measures to keep the information secret, including securing all data electronically and requiring staff to leave data locked within the lab facilities and password-protected computer systems. (*Id.*) Plaintiff owns all of her trade secrets and intellectual property, and her trade secrets have independent economic value. (*Id.* ¶¶ 12, 13.)

In October 2018, Plaintiff reported "academic and research misconduct by a PhD candidate" to Defendant. (*Id.* ¶ 14.) The misconduct continued in February 2019, and Plaintiff reported it again. (*Id.*) The misconduct involved theft of Plaintiff's intellectual property. (*Id.*) Defendant did not take any action to address and reverse the misconduct by the student, and Defendant reprimanded Plaintiff for opposing the student's misconduct. (*Id.* ¶¶ 17, 18.) Additionally, Defendant removed Plaintiff from the student's dissertation committee. (*Id.* ¶ 17.) Defendant also permitted the student to publish Plaintiff's trade secrets as a poster for a scientific meeting, permitted the student to publish a dissertation misappropriating Plaintiff's intellectual property, and condoned or assisted the student in filing for patent protection. (*Id.*)

Plaintiff alleges that Defendant treats Caucasian, male, and non-Chinese national origin faculty better than it treats her and those similarly situated. (*Id.* ¶ 19.) She describes four instances in which Caucasian, male faculty members were engaged in misconduct and were not disciplined. (*Id.*) She also lists three instances in which Chinese-American employees either pursued discrimination charges with the EEOC against the Defendant, sued the Defendant, or left the Defendant's employment because of discrimination. (*Id.* ¶ 21.)

Plaintiff first complained of discrimination to Defendant in May 2019, and she filed her Equal Employment Opportunity Commission ("EEOC") charge in March 2020. (*Id.* ¶ 24.)

Because of Plaintiff's actions, Defendant "retaliated against her by denying her grievance of its reprimand of her in August 2019, giving her a negative performance evaluation in August 2019 thereby reducing the salary she would have otherwise received, denying her grievance of her performance evaluation in November 2020, and continuously steering students away from courses and mentorship." (*Id.*) Plaintiff alleges she has suffered emotional pain and suffering, loss of wages and benefits, past and future pecuniary losses, and other damages. (*Id.* ¶¶ 26, 27.)

## II. PROCEDURAL HISTORY

Plaintiff filed her Complaint on November 18, 2020. (ECF No. 1.) On January 20, 2021, Defendant filed a Motion to Dismiss, (ECF No. 5), and an Answer and Affirmative Defenses, (ECF No. 7). On February 3, 2021, Defendant filed an Amended Complaint, (ECF No. 9), and a Brief in Opposition to Motion to Dismiss, (ECF No. 10). Plaintiff filed a Reply Memorandum in Support of its Motion to Dismiss on February 5, 2021, (ECF No. 11). On February 16, 2021, the Court denied the Motion to Dismiss, (ECF No. 5), as moot because Plaintiff had filed an Amended Complaint. The Court directed the Defendant to file a response to Plaintiff's Amended Complaint.

On February 19, 2021, Defendant filed the instant Motion to Dismiss, (ECF No. 13), and an Answer and Affirmative Defenses to the Amended Complaint, (ECF No. 15). Plaintiff filed a Brief in Opposition to Motion to Dismiss on March 5, 2021, (ECF No. 16). Defendant filed its Reply Brief in Support of its Motion to Dismiss on March 11, 2021, (ECF No. 17), at which time the Motion became ripe.

## III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). The Federal Rules of Civil Procedure only require that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). In considering a motion to dismiss, a plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc.*, 7 F.3d at 1134 (citations omitted); *see also Martin*, 980 F.2d at 952.

## IV. DISCUSSION

<u>Count One: Disparate Treatment on the Basis of Race, Sex, and/or National Origin in Violation of Title VII</u>

Plaintiff alleges in Count One of her Amended Complaint that she received disparate treatment from Defendant on the basis of race, sex, and/or national origin in violation of Title VII. (Am. Compl. ¶¶ 29-35.)

"[A]n employee challenging an employment practice of an employer in Virginia has 300 days from the last date of alleged discrimination to file a charge with the EEOC," and "[i]f the statutory time period elapses between the allegedly discriminatory incident and the filing of the EEOC charge, the litigant is forever barred from Title VII relief." *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 619 (E.D. Va. 2011) (citations omitted). "The limitations periods [of Title VII], while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment

decisions that are long past." *Del. State Coll. v. Ricks*, 449 U.S. 250, 256–57 (1980) (citations omitted).

Plaintiff filed her EEOC Charge of Discrimination on March 16, 2020. (Am. Compl. ¶ 24; ECF No. 14-3.)[2] Three hundred days before March 16, 2020, is May 21, 2019. Therefore, for her Title VII disparate treatment claims, the Court may only consider events described in the EEOC charge that occurred no earlier than May 21, 2019.

According to the Plaintiff's Amended Complaint, she was removed from the PhD student's dissertation committee[3] and reprimanded by the Defendant prior to May 21, 2019.[4] (Am. Compl. ¶¶ 17, 18.) Because these events occurred prior to May 21, 2019, they are time barred under Title VII for disparate treatment.

For the events that are not time barred, the Court must determine if Plaintiff has sufficiently exhausted her administrative remedies. "Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (citing *King v. Seaboard Coast Line R.R. Co.,* 538 F.2d 581, 583 (4th Cir.1976)). "A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit." *Id.* (citing *Evans v. Techs. Applications and Serv. Co.,* 80 F.3d 954, 962–63 (4th Cir.1996)).

---

[2] The Court on a motion to dismiss may "also consider documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits," as well as any document submitted by the movant if the document was "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). Although the EEOC Charge of Discrimination was not attached to the Complaint, it was integral to the Complaint, and the Plaintiff agrees that it "may be used for a limited purpose." (Am. Compl. ¶¶ 8, 24, 44, 49; Mem. Opp'n at 7.)

[3] The EEOC charge states that Plaintiff complained about being removed from the dissertation committee "in May 2019," and she later received a letter of reprimand discussing her removal on May 13, 2019. (ECF No. 14-3 at 1.) This suggests that the removal from the dissertation committee had to have occurred prior to May 13, 2019, which is before the 300-day cut-off of May 21, 2019.

[4] The EEOC charge states that the letter of reprimand was issued on May 13, 2019. (ECF No. 14-3 at 1.)

After the removal of the time barred events, there are two remaining events that Plaintiff alleges constitute disparate treatment: receiving a negative performance evaluation and having students steered away from her courses and mentorship. (Am. Compl. ¶ 24.) These two events, however, are not included in her March 16, 2020 EEOC Charge of Discrimination. (ECF No. 14-3.) Additionally, Plaintiff has not alleged that she filed any other EEOC Charges of Discrimination. Therefore, Plaintiff did not exhaust her administrative remedies for these events, and as such she cannot yet file a suit. Thus, the Court will grant the Motion to Dismiss as to Count One.

Count Two: Disparate Treatment on the Basis of Race and Ethnicity in Violation of 42 U.S.C. § 1981

In Count Two of the Amended Complaint, Plaintiff alleges disparate treatment on the basis of race and ethnicity in violation of 42 U.S.C. § 1981. (Am. Compl. ¶¶ 36-42.) Unlike Title VII claims, § 1981 claims do not require a plaintiff to exhaust her administrative remedies before filing a lawsuit. *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 577 n.12 (E.D. Va. 2009). Therefore, the Court will analyze Plaintiff's § 1981 disparate treatment claims without considering the EEOC Charge.

"To establish a *prima facie* disparate treatment claim under Title VII or § 1981, the plaintiff must show: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) that similarly-situated employees outside the protected class received more favorable treatment." *Cepeda v. Bd. of Educ. of Baltimore Cty.*, 814 F. Supp. 2d 500, 510 (D. Md. 2011) (citing *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 (4th Cir. 2004)).

The Court must determine whether the events alleged by Plaintiff are "adverse employment actions." Plaintiff alleges that she was (1) removed from the PhD student's dissertation committee, (2) reprimanded by Defendant, (3) given a negative performance evaluation, and (4) had students steered away from her courses and mentorship. (Am. Compl. ¶¶ 27, 24.) "An adverse employment

6

action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (citing *James v. Booz-Allen & Hamilton, Inc.*, 368 F. 3d 371, 375 (4th Cir. 2004)). The typical requirements an adverse employment action are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion . . . ." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)

Plaintiff's removal from the PhD student's dissertation committee and the steering away of students from courses and mentorship could be construed as a loss of supervisory responsibility. Therefore, Plaintiff will be allowed to proceed with this claim.

The reprimand alone, however, will not be considered an adverse employment action.

> A reprimand cannot satisfy the adverse employment action element of a . . . discrimination claim unless the complaint specifically alleges that: (1) the reprimand has had a direct adverse employment effect or (2) the reprimand, under the employer's disciplinary practices or for some other plausible reason, will exacerbate future discipline in a way that plausibly can be expected to create a future adverse employment effect.

*Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 821 (E.D. Va. 2016). Plaintiff did not allege that the reprimand created a direct adverse employment effect or that the reprimand would exacerbate future discipline. Therefore, the reprimand will not be considered an adverse employment action, and this event will not survive the Motion to Dismiss as to Count Two.

The case law concerning negative performance evaluations is more complicated. "A 'downgrade of a performance evaluation *could* effect [sic] a term, condition, or benefit of employment' if it has a tangible effect on the terms or conditions or employment." *Shetty v. Hampton Univ.*, No. 4:12CV158, 2014 WL 280448, at *10 (E.D. Va. Jan. 24, 2014) (quoting *Booz-Allen & Hamilton, Inc.,* 368 F. 3d at 377). "However, a poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Id.* Plaintiff alleges that her negative

performance evaluation "reduc[ed] the salary she would have otherwise received." (Am. Compl. ¶ 24.) The Court does not have enough information at this time to determine whether this performance evaluation detrimentally altered the terms or conditions of Plaintiff's employment. Therefore, this claim will survive the Motion to Dismiss.

Thus, the Court will grant in part and deny in part the Motion to Dismiss as to Count Two.

Count Three: Retaliation in Violation of Title VII

In Count Three, Plaintiff alleges that the Defendant retaliated against her in violation of Title VII after she filed her first complaint of discrimination in May 2019 and her EEOC Charge in March 2020. (*Id.* ¶¶ 24, 43-47) She states that the retaliation involved "denying her grievance of its reprimand of her in August 2019, giving her a negative performance evaluation in August 2019 . . . denying her grievance of her performance evaluation in November 2020, and continuously steering students away from her courses and mentorship." (*Id.*)

To establish a prima facie case for retaliation, a plaintiff must show "(1) that [s]he engaged in a protected activity; (2) that [her] employer took an adverse employment action against [her]; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). Filing an EEOC Charge and making informal complaints are both protected activities. *Id.*; *El v. Tek Sys., Inc.*, 311 F. Supp. 2d 516, 520 (E.D. Va. 2002) (citing *Laughlin v. Metro. Washington Airports*, 149 F. 3d 253, 259 (4th Cir. 1998)), *aff'd*, 55 F. App'x 201 (4th Cir. 2003).

As this Count is under Title VII, the Court would ordinarily look to the EEOC Charge and the 300-day time limit. The Fourth Circuit, however, has ruled that a plaintiff may raise a retaliation claim for the first time in federal court and does not have to file an EEOC Charge alleging retaliation first. *Nealon v. Stone*, 958 F. 2d 584, 590 (4th Cir. 1992.) The Court reasoned

8

that "a plaintiff that has already been retaliated against one time for filing an EEOC charge will naturally be reluctant to file a separate charge, possibly bringing about further retaliation." *Jones v. Calvert Grp., Ltd.*, 551 F. 3d 297, 302 (4th Cir. 2009). Therefore, the Court can consider the Plaintiff's retaliation claims under Title VII without determining whether she filed an EEOC Charge.

Plaintiff engaged in a protected activity by complaining informally and filing her EEOC claim. The question then becomes whether the events she describes are adverse employment actions, and whether there is a causal connection between the protected activities and the adverse employment action. As discussed previously, the negative performance evaluation and the steering of students away from her courses and mentorship could be adverse employment actions. Plaintiff also alleges that her protected activities and these events are connected. These claims, therefore, will survive the Motion to Dismiss as to Count Three.

The remaining events are the denial of her grievance of the reprimand and the denial of her grievance of the performance evaluation. At this point in the litigation, the Court cannot conclude that these are not discriminatory acts that adversely affected the terms, conditions, or benefits of her employment. These claims, therefore, will survive the Motion to Dismiss as well.

The Court will deny the Motion to Dismiss as to Count Three.

Count Four: Retaliation in Violation of 42 U.S.C. § 1981

Plaintiff alleges in Count Four that Defendant retaliated against her in violation of 42 U.S.C. § 1981. (Am. Compl. ¶¶ 48-52.) The elements of retaliation under § 1981 are the same as the elements of retaliation under Title VII. *Booz-Allen Hamilton, Inc.*, 383 F. 3d 180 at 188. The analysis is the same, and thus, for the reasons described in Count Three, the Court will deny the Motion to Dismiss as to Count Four.

Counts Five and Six: Pattern and Practice Discrimination in Violation of Title VII and in Violation of 42 U.S.C. § 1981

Plaintiff alleges in Counts Five and Six of her Amended Complaint that Defendant's "pattern and practice was to discriminate on the basis of race and national origin in its treatment of Asian and Chinese national origin employees" and "to discriminate on the basis of race and ethnicity in its treatment of Asian and Chinese ethnicity employees." (Am. Compl. ¶¶ 54, 57.) She alleges that Defendant's "conduct over more than ten years evidences a systemic policy of discrimination . . . ." (*Id.*)

"The Fourth Circuit has stated clearly that non-class action plaintiffs may not assert a pattern and practice claim." *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 479 (E.D. Va. 1999) (citing *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 759 (4th Cir. 1998) ("[I]ndividuals do not have a private, non-class cause of action for pattern or practice discrimination under §1981 or Title VII."), *aff'd*, 188 F.3d 501 (4th Cir. 1999)). As Plaintiff is a non-class action plaintiff, she cannot bring a pattern and practice claim under either Title VII or 42 U.S.C. § 1981. Therefore, the Court will grant the Motion to Dismiss as to Counts Five and Six.

Count Seven: Violations of the Defend Trade Secrets Act

In Count Seven of the Amended Complaint, Plaintiff alleges that Defendant violated the Defend Trade Secrets Act ("DTSA"). (Am. Compl. ¶¶ 60-63.) A trade secret is defined as "all forms and types of . . . scientific . . . information . . . if — (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value . . . from not being generally known to . . . another person who can obtain economic value from the disclosure or use of the information . . . ." 18 U.S.C. § 1839(3).

To establish an action under the DTSA, a plaintiff must show that "(1) it owns a trade secret; (2) the trade secret was misappropriated; and (3) the trade secret implicates interstate or foreign commerce." *Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D.

Va. 2018) (citing 18 U.S.C. §1836(b)(1)). To establish the misappropriation element, Plaintiff must show:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
> > (i) used improper means to acquire knowledge of the trade secret;
> > (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
> > > (I) derived from or through a person who had used improper means to acquire the trade secret;
> > > (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
> > > (III) derived from or through a person who had owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret . . . .

18 U.S.C. §1839(5).

In her Amended Complaint, Plaintiff asserts that the scientific treatments she developed were trade secrets because they were scientific information that she attempted to keep secret, and they had independent economic value from not generally being known to another who can obtain economic value from the disclosure and use of the information. (Am. Compl. ¶¶ 11, 12.) She alleges that her trade secrets were misappropriated by Defendant because Defendant:

> used improper means to acquire the trade secrets and at the time that it acquired the trade secrets knew or had reason to know that knowledge of the trade secrets was:
> > a. derived from [Defendant]'s relationship with Plaintiff and through the student who had used improper means to acquire the trade secrets;
> > b. acquired under circumstances giving rise to a duty of both the student and [Defendant] to maintain the secrecy of the trade secrets or limit the use of the trade secrets and/or;
> > c. derived from or through the student and faculty of [Defendant] who owed a duty to Plaintiff to maintain the secrecy of the trade secrets and/or limit the use of the trade secrets.

(Am. Compl ¶ 62.) Additionally, Plaintiff alleges that Defendant acquired the trade secrets of Plaintiff without the express or implied consent of Plaintiff, and that she was damaged by these actions. (*Id.* ¶¶ 61, 63.)

11

In support of these claims, Plaintiff states that the Defendant protected a PhD student who stole her intellectual property when the student had a duty to maintain the secrecy and/or limit the use of the trade secrets. (*Id.* ¶¶ 14, 17.) She alleges that Defendant had a duty to maintain the secrecy and/or limit the use of Plaintiff's trade secrets, but instead of punishing the student, Defendant permitted the student to publish trade secrets as a poster for a scientific meeting and a dissertation misappropriating Plaintiff's intellectual property. (*Id.* ¶¶ 16, 17.) Defendant also allegedly assisted or allowed the student to file for patent protection. (*Id.*)

At this point in the litigation, Plaintiff has sufficiently pled the elements of a violation of the Defend Trade Secrets Act. Therefore, the Motion to Dismiss as to Count Seven will be denied.

<u>Count Eight: Violations of the Virginia Uniform Trade Secrets Act</u>

In Count Eight of the Amended Complaint, Plaintiff alleges violations of the Virginia Uniform Trade Secrets Act ("VUSTA"). (Am. Compl. ¶¶ 64-68.) Under this Act, a trade secret is information that "(1) derives independent economic value from not being generally known, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 574 (E.D. Va. 2004) (citing Va. Code. Ann. § 59.1-336.) Misappropriation of a trade secret under VUSTA is defined as:

> 1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> 2. Disclosure or use of a trade secret of another without express or implied consent by a person who
>     a. Used improper means to acquire knowledge of the trade secret; or
>     b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
>         (1) Derived from or through a person who had utilized improper means to acquire it;
>         (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;
>         (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use . . . .

Va. Code Ann. § 59.1-336.

These elements are substantially similar to the elements under DTSA. Plaintiff alleges that she has information that derives economic value from not being generally known and is the subject of reasonable efforts to maintain its secrecy. (Am. Compl. ¶¶ 11, 12.) She contends that Defendant misappropriated her trade secrets by allowing the PhD student who stole her trade secrets to publish them on a poster and in a dissertation without her consent, as well as allowing or assisting the student in filing for patent protection. (*Id.* ¶¶ 16, 17.) At this time, the violations of VUSTA are sufficiently pled, and the Motion to Dismiss as to Count Eight will be denied.

<u>Counts Nine and Ten: Conspiracy Under Va. Code § 18.2-499 and Conspiracy in Violation of Virginia Common Law</u>

In Counts Nine and Ten of her Amended Complaint, Plaintiff alleges claims for conspiracy under Va. Code § 18.2-499 and Virginia common law. (Am. Compl. ¶¶ 69-74.) "To state a claim for a violation of the business conspiracy statute, Va. Code. Ann. §18.2-499, a plaintiff must allege (1) a combination of two or more persons for the purpose of willfully and maliciously injuring a plaintiff's business, and (2) resulting damage to the plaintiff." *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 616 (E.D. Va. 2005) (citations omitted). Similarly, "[i]n Virginia, the elements of a common law civil conspiracy claim are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citing *Glass v. Glass*, 321 S.E. 2d 69, 74 (Va. 1984)).

Plaintiff alleges that Defendant "acted in combination with the [PhD] student for the purpose of willfully and/or maliciously injuring Plaintiff in her business and profession" and "acted in combination with the [PhD] student to accomplish the theft of Plaintiff's intellectual property and trade secrets by unlawful means." (Am. Compl. ¶¶ 70, 73.) These actions resulted in damage to Plaintiff. (*Id.* ¶¶ 71, 74.)

13

Defendant argues that both of the conspiracy claims are barred by the intracorporate immunity doctrine. (Mem. Supp. at 14.) The doctrine of intracorporate immunity "recognizes that a conspiracy 'requires two or more persons and that, because a corporation and its agents comprise a single legal entity, they are legally incapable of conspiracy.'" *SecureInfo Corp.*, 378 F. Supp. 2d at 616 (quoting *Lewin v. Cooke*, 95 F. Supp. 2d 513, 524-25 (E.D. Va. 2000) *aff'd*, 28 F. App'x 186 (4th Cir. 2002)) (citations omitted). Defendant argues that the PhD student was Defendant's agent because she was "(1) subject to the control of the principal with regard to the work to be done and manner of performing it, and (2) the work [was] done on the business of the principal or for the principal's benefit." (Mem. Supp. at 24 (citing *Whitfield v. Whittaker Mem'l Hosp.*, 169 S.E. 2d 563, 567 (Va. 1969)).) Defendant highlights that the Amended Complaint states that the PhD student was under "the direct supervision and control" of Plaintiff, who herself was an employee of Defendant, and the PhD student was doing things for the benefit of the Defendant. (Mem. Supp. at 25.) Defendant argues that this makes the PhD student an agent of the Defendant, and therefore the conspiracy claims should fail because a Defendant cannot conspire with its agent. (*Id.*)

Construing the Amended Complaint in the light most favorable to the Plaintiff, the Court cannot find as a matter of law that the defense of intra-corporate immunity applies. Therefore, the Court will deny the Motion to Dismiss as to Counts Nine and Ten.

<u>Count Eleven: Breach of Contract</u>

Count Eleven in Plaintiff's Amended Complaint alleges Breach of Contract. (Am. Compl. ¶¶ 75-78.) In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Rogers v. Deane*, 992 F. Supp. 2d 621, 629 (E.D. Va. 2014) (quoting *Filak v. George*, 594 S.E. 2d 610, 614 (2004))

14

(citations omitted), *aff'd*, 594 F. App'x 768 (4th Cir. 2014).  Plaintiff alleges that she had an agreement with Defendant "wherein [Defendant] assigned to her any and all rights it had in her intellectual property and trade secrets," and Defendant "breached that agreement by giving those rights to the student, and facilitating/allowing the student to pursue patent protection for the intellectual property and trade secrets that belonged to Plaintiff." (Am. Compl. ¶¶ 76, 77.)  She alleges that Defendant's breach of this agreement resulted in damage to her. (*Id.* ¶ 78.)  At this stage in the litigation, Plaintiff has adequately pled the elements of a breach of contract claim. Therefore, the Motion to Dismiss will be denied as to Count Eleven.

## V. CONCLUSION

For the reasons detailed above, Defendant's Motion to Dismiss (ECF No. 13) will be granted in part and denied in part.

An appropriate Order shall issue.

/s/ _____
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: July 12, 2021