IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| AMY H. TANG, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:20cv575 (RCY) |
| | ) | |
| EASTERN VIRGINIA | ) | |
| MEDICAL SCHOOL, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Eastern Virginia Medical School's Motion for Summary

Judgment (ECF No. 31). The motion has been fully briefed, and the Court dispenses with oral

argument because the facts and legal contentions are adequately presented in the materials before

the Court, and oral argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J).

For the reasons stated below, the Court will grant Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

On December 18, 2009, Eastern Virginia Medical School ("EVMS" or "Defendant") hired

Dr. Amy Tang ("Plaintiff" or "Dr. Tang") as an Assistant Professor in the Department of

Microbiology and Molecular Cell Biology. (ECF No. 32-1 at 1.)[1]  When Plaintiff was hired, she

signed a Standard Faculty Employment Agreement containing a section that reads as follows:

> INVENTIONS; PATENTS. The Employee agrees that, during the term of this
> Agreement, any inventions, improvements, ideas, or suggestions made or
> originated by the Employee, or any patents obtained by him/her, at or during any
> period of time that the Employee is engaged in performing services for EVMS, or
> as a direct or indirect result of such services, or by and through the use of the
> facilities or equipment of EVMS, shall be assigned to EVMS, or a non-profit
> organization designated by it and established for its benefit, and shall be governed
> by the patent policy established by EVMS and by applicable governmental laws

---

[1] The Court employs the pagination assigned to all documents referenced herein by the CM/ECF docketing system,
except deposition transcripts which shall also refer to the internal deposition pages and lines.

and regulations as may be adopted and/or amended from time to time. Ideas or works conceived, initiated or improved upon during Employee's employment but completed thereafter, shall also be subject to this section. Employee further agrees to execute the EVMS Participation/Confidential Non-Disclosure Agreement (and any attachments thereto), a copy of which is attached hereto as <u>Exhibit A</u> and incorporated herein.

(Mem. Supp. Mot. Summ. J. ¶ 3, ECF No. 32; ECF No. 32-2 at 3.)  Plaintiff also signed a Participation/Confidential Non-Disclosure Agreement that provided the following: "Each Invention shall be deemed to be the property of EVMS: each such Invention and related rights required to obtain Letters Patent shall be assigned by the Inventor to EVMS." (Mem. Supp. Mot. Summ. J. ¶ 4; ECF No. 32-2 at 9.)

On March 2, 2018, Plaintiff sent an email to her mentee, Elizaveta Svyatova ("Dr. Svyatova"), informing Dr. Svyatova of her desire to submit a patent application to the EVMS patent office together and asking Dr. Svyatova to complete tasks related to the application submission.  (Mem. Supp. Mot. Summ. J. ¶ 5; ECF No. 32-4.)  The patent application would cover a chemical called Ethylenediaminetetraacetic Acid ("EDTA"), and Plaintiff requested that Dr. Svyatova refrain from submitting abstracts relating to EDTA until the patent application process was completed. (Mem. Supp. Mot. Summ. J. ¶ 5; ECF No. 32-4; Tang Dep. Tr. 82:1-83:19; 85:21-86:9; 101:15-103:15; 104:18-105:15, ECF No. 32-3 at 7-9.)  On October 13, 2018, Dr. Svyatova presented her dissertation at a research day event. (Mem. Supp. Mot. Summ. J. ¶ 6.)  Plaintiff took issue with Dr. Svyatova's research poster because it contained explicit reference to EDTA. (*Id.*) Plaintiff consulted with her colleagues and was able to instruct Dr. Svyatova to redact portions of the poster containing reference to EDTA in an effort to protect the potentially patentable material. (*Id.* ¶¶ 6-7; ECF No. 32-7.)  On October 13, 2018, Plaintiff sent an email to Margaret Morris, chair of the faculty grievance committee, explaining the research day incident and requesting guidance on how to proceed against Dr. Svyatova for what Plaintiff described as a "possible violation of

PhD student honor code at EVMA." (ECF No. 32-7.)  That same day, Plaintiff sent an email to Paul DiMarco ("Mr. DiMarco"), EVMS's Director of Technology Transfer, thanking him for his guidance during the research day incident and submitting her invention disclosure for patentability review.[2] (Mem. Supp. Mot. Summ. J. ¶ 9; ECF No. 32-8 at 1-2.)  On October 16, 2018, Mr. DiMarco sent Plaintiff's invention disclosure to outside counsel to determine whether Plaintiff's purported invention was patentable. (Mem. Supp. Mot. Summ. J. ¶ 10; ECF No. 32-8 at 1.)  On November 26, 2018, Mr. DiMarco notified Plaintiff that her invention disclosure appeared to be known and that EVMA would not be pursuing patent protection for Plaintiff's invention disclosure. (ECF No. 32-10 at 1-2.)   EVMS later assigned the disclosed invention to Plaintiff on November 25, 2019.[3] (ECF No. 32-11.)

On or around January 16, 2019, Dr. Svyatova filed a complaint with EVMS alleging hostile work environment and that Plaintiff had made inappropriate comments to and about Dr. Svyatova.[4] (Mem. Supp. Mot. Summ. J. ¶ 14; ECF Nos. 32-13, 32-15; Matthew Schenk Dep. Tr. 21:13-24:20, ECF No. 32-14 at 2-5.)  On February 5, 2019, Mr. DiMarco sent both Plaintiff and Dr. Svyatova's invention disclosures to outside counsel. (Mem. Supp. Mot. Summ. J. ¶ 21; ECF No. 21 at 2.) Outside counsel determined that there was enough of a difference between the inventions to warrant a separate search as Dr. Svyatova's invention could "be best described as a more specific and focused aspect" of Plaintiff's invention. (Mem. Supp. Mot. Summ. J ¶ 21; ECF No. 21 at 1.) On or about February 6, 2019, Matthew Schenk ("Mr. Schenk"), EVMS's Executive Director of Human Resources, met with Plaintiff to discuss Dr. Svyatova's complaint and advised Plaintiff

---

[2] Plaintiff submitted her invention disclosure as instructed in EVMS's Intellectual Property Policy. (Mem. Supp. Mot. Summ. J. ¶ 9; ECF No. 32-9.)
[3] Although the Invention Assignment Agreement states that its "Effective Date" is November 25, 2019, it appears that Plaintiff did not sign the agreement until March 31, 2020 and that the person signing as "Assignor" did not sign until April 25, 2020. (ECF No. 32-11.)
[4] Plaintiff allegedly called Dr. Svyatova promiscuous, a party girl, and stated that Dr. Svyatova contracted HIV. (ECF No. 32-15.)

that she was required to maintain appropriate work boundaries with students and employees. (Mem. Supp. Mot. Summ. J. ¶ 16; ECF No. 32-16.)  Mr. Schenk advised Plaintiff that a different member of Dr. Svyatova's dissertation committee would be appointed as chair and that any communications between Plaintiff and Dr. Svyatova should include Melissa Scott, Director of Student Rights and Responsibilities. (Mem. Supp. Mot. Summ. J. ¶ 16; ECF No. 32-16.)  Mr. Schenk also acknowledged that Plaintiff felt that her removal as chair of Dr. Svyatova's dissertation committee was punitive and that Plaintiff would follow up with the biomedical sciences program about the removal. (ECF No. 32-16.)  During the meeting, Plaintiff also discussed her desire to report Dr. Svyatova to the honor counsel and remove her from Plaintiff's lab because of the research day incident. (*Id.*)  However, Mr. Schenk explained that if Plaintiff was not satisfied with the outcome of his actions, she could proceed with reporting Dr. Svyatova to whoever she deemed appropriate. (*Id.*)  On February 8, 2019, Plaintiff attempted to call an emergency academic meeting with EVMS faculty members to discuss her issues with Dr. Svyatova and sought advice from her colleagues. (Mem. Supp. Mot. Summ. J. ¶ 17; ECF No. 32-17 at 2-3.) Mr. Schenk responded to Plaintiff's email stating that Plaintiff's email was not the appropriate forum for the discussion, that the issue of IP must be handled by the Office of Tech Transfer, and to contact him if anyone had issues regarding student behavior in the workplace. (Mem. Supp. Mot. Summ. J. ¶ 17; ECF No. 32-17 at 2.)

Despite Mr. Schenk's warning, on February 9, 2019, Plaintiff sent another email to EVMS faculty regarding her removal as chair and the allegedly "highly punitive" nature of EVMS's actions. (Mem. Supp. Mot. Summ. J. ¶ 17; ECF No. 32-17 at 1.)  Mr. Schenk once again responded to Plaintiff's email explaining that the meeting was "not appropriate to discuss issues that [were] clearly HR related" and advising Plaintiff that should Plaintiff proceed with the meeting,

"corrective action may be taken." (Mem. Supp. Mot. Summ. J. ¶ 17; ECF No. 32-17 at 1.)  On February 10, 2019, Plaintiff emailed Mr. Schenk, Josephine Wiley of EVMS's General Counsel's office ("Ms. Wiley"), and other colleagues, inquiring as to why Dr. Svyatova's "extreme unprofessional and dishonorable conduct" had been treated differently from another student that was dismissed "over a simple copy and paste incident without proper citation." (Mem. Supp. Mot. Summ. J. ¶ 18; ECF No. 32-18 at 2.)  Plaintiff also asked how Mr. Schenk could justify how she "was treated over her protest over the lack of AP promotion at EVMS and stated that the "persistent persecution pattern must end at EVMS." (Mem. Supp. Mot. Summ. J. ¶ 18; ECF No. 32-18 at 2.)  Ms. Wiley advised Plaintiff that HR was appropriately addressing Dr. Svyatova's complaint, that Plaintiff's continuous emails were "inappropriate and unprofessional," and that Plaintiff's behavior could be violative of the EVMS Compliance Reporting /Anti-Retaliation Policy. (Mem. Supp. Mot. Summ. J ¶ 18; ECF No. 32-18 at 1.)

On February 11, 2019, Plaintiff submitted scientific/research misconduct allegations against Dr. Svyatova related to the research day event and Plaintiff's discovery that Dr. Svyatova allegedly filed an IP patent using Plaintiff's EDTA idea and research without listing Plaintiff as a co-inventor. (Mem. Supp. Mot. Summ. J. ¶¶ 19-20; ECF No. 32-19 at 11-12.)  On February 18, 2019, Plaintiff asked Mr. Schenk when she could report Dr. Svyatova to the EVMS student honor code council. (Mem. Supp. Mot. Summ. J. ¶ 22; ECF No. 32-19 at 8.)  Mr. Schenk informed Plaintiff that while Plaintiff had a right to file a complaint, such a complaint should have been submitted to the Honor Council within three business days of the alleged conduct, and he reassured Plaintiff that the Research Office was investigating Plaintiff's scientific misconduct complaint.[5]

---

[5] Plaintiff sent another email on February 27, 2019, explaining that she was busy working on a resubmission in the days following the research day incident and reiterating her frustrations with EVMS's perceived inaction in the face of Dr. Svyatova's alleged misconduct and scientific dishonesty. (ECF No. 32-19 at 3-4.)

(Mem. Supp. Mot. Summ. J. ¶ 22; ECF No. 32-19 at 7.)    On March 22, 2019, Plaintiff sent an email to several EVMS individuals regarding her allegations against Dr. Svyatova and was warned that review of her complaint was confidential and that communication to numerous parties by Plaintiff regarding the investigation was unacceptable. (Mem. Supp. Mot. Summ. J. ¶ 23; ECF No. 32-22 at 1.)  On April 3, 2019, Plaintiff was informed that the Research Office did not find that Dr. Svyatova had committed falsification, fabrication, or plagiarism. (Mem. Supp. Mot. Summ. J. ¶ 19; ECF No. 32-23.) On April 17, 2019, Plaintiff responded to news of the Research Office's findings; Plaintiff expressed her disagreement with the conclusion of the investigation, accused the office of sweeping the matter under the rug, and notified the office that she had retained outside counsel. (Mem. Supp. Mot. Summ. J. ¶ 25; ECF No. 32-24 at 3-4.)  Dr. William Wasilenko ("Dr. Wasilenko"), Vice Dean for Research, confirmed receipt of Plaintiff's criticism and informed Plaintiff that she had the option of filing a grievance about her concerns. (Mem. Supp. Mot. Summ. J. ¶ 25; ECF No. 32-24 at 1-2.)

On April 26, Plaintiff contacted Mr. Schenk once again to discuss her complaints against Dr. Svyatova. (ECF No. 32-25 at 9-14.)  Mr. Schenk replied to Plaintiff's email on April 30 and informed her that her complaints regarding intellectual property were closed but he would need to speak with Plaintiff about other issues and requested her availability. (Mem. Supp. Mot. Summ. J. ¶¶ 25-26; ECF No. 32-25 at 8-9.)    Also on April 30, Plaintiff again sent Mr. Schenk an email detailing her dismay at EVMS's handling of her complaints and asked whether her attorney could be present at the next meeting. (Mem. Supp. Mot. Summ. J. ¶ 26; ECF No. 32-25 at 7-8.)  Mr. Schenk responded to Plaintiff's email on May 1, 2019, reiterating that the intellectual property matter was closed, asking Plaintiff for her availability, and informing her that her attorney would not be permitted to attend the meeting. (Mem. Supp. Mot. Summ. J. ¶ 27; ECF No. 32-25 at 6-7.)

On May 3, 2019, Plaintiff forwarded her email communications with Mr. Schenk to her colleagues and included statements that she did not trust HR or Dr. Kerry in particular because of "her discriminative act of delaying [Plaintiff's] AP promotion for years" and giving Plaintiff low scores in her evaluations. (Mem. Supp. Mot. Summ. J. ¶ 28; ECF No. 32-25 at 2-3.)

On May 9, 2019, Dr. Margaret Morris ("Dr. Morris"), Program Director, informed Plaintiff that she would be disbanding Dr. Svyatova's dissertation committee effective immediately to ensure that Dr. Svyatova could complete her academic program. (Mem. Supp. Mot. Summ. J. ¶ 29; ECF No. 32-26.)   In response, Plaintiff forwarded Dr. Morris' letter to the dissertation committee with an accompanying message stating in part, "This is not right. Please continue to serve on this committee as you see fit." (Mem. Supp. Mot. Summ. J. ¶ 29; ECF No. 32-27 at 1.) On May 13, 2019, Mr. Schenk issued Plaintiff a written reprimand citing the "inappropriate" accusations that Plaintiff continuously made against Dr. Svyatova and Plaintiff's refusal to accept the outcomes of the numerous investigations conducted regarding Plaintiff's accusations. (Mem. Supp. Mot. Summ. J. ¶ 30; ECF No. 32-28.)   On June 27, 2019, pursuant to the EVMS Faculty Grievance Policy, Plaintiff filed a grievance regarding the written reprimand from Mr. Schenk and requested that the reprimand "be withdrawn and [] expunged" from her record. (Mem. Supp. Mot. Summ. J. ¶ 31; ECF No. 32-29.)   Danielle Calhoun ("Ms. Calhoun"), EVMS's Senior Assistant Director of Human Resources, investigated Plaintiff's grievance and found no evidence to support Plaintiff's grievance. (Mem. Supp. Mot. Summ. J. ¶ 33; ECF No. 32-31.)   On August 20, 2019, dissatisfied by Ms. Calhoun's findings, Plaintiff grieved the written reprimand with EVMS's faculty senate. (Mem. Supp. Mot. Summ. J. ¶ 34; ECF No. 32-32.)   After Mr. Schenk submitted a response to Plaintiff's grievance, the faculty grievance committee conducted a hearing and

concluded on December 12, 2019, that Plaintiff's written reprimand was warranted. (Mem. Supp. Mot. Summ. J. ¶ 34; ECF Nos. 32-33, 32-34.)

On January 15, 2020, Plaintiff submitted another grievance to the faculty grievance committee, this time grieving her Fiscal Year 2019 Performance Evaluation ("FY 2019 Evaluation"). (Mem. Supp. Mot. Summ. J. ¶ 35; ECF No. 32-35 at 1-3.)  In this grievance, Plaintiff stated that she believed that her FY 2019 Evaluation reflected "bias and discrimination." (ECF No. 32-35 at 1.)  On March 24, 2020, Plaintiff filed a charge of discrimination with the EEOC alleging race, sex, and national origin discrimination and retaliation. (Mem. Supp. Mot. Summ. J. ¶ 37; ECF No. 32-39 at 1-2.)  On August 20, 2020, the EEOC issued a Dismissal and Notice of Rights, finding that, based on its investigation, the EEOC was unable to conclude that the information obtained established discrimination or retaliation as alleged by Plaintiff. (Mem. Supp. Mot. Summ. J. ¶ 37; ECF No. 32-40.)  Following the dismissal, on November 18, 2020, Plaintiff filed a Complaint against EVMS alleging discrimination, retaliation, disparate treatment, conspiracy, breach of contract, and violations of the Defend Trade Secrets Act and the Virginia Uniform Trade Secrets Act. (ECF No. 1.)

## II. PROCEDURAL HISTORY

Plaintiff filed her Complaint on November 18, 2020. (ECF No. 1.)  On January 20, 2021, Defendant filed a Motion to Dismiss (ECF No. 5) and an Answer and Affirmative Defenses (ECF No. 7).  On February 3, 2021, Defendant filed an Amended Complaint (ECF No. 9) and a Brief in Opposition to Motion to Dismiss (ECF No. 10).  Plaintiff filed a Reply Memorandum in Support of its Motion to Dismiss on February 5, 2021 (ECF No. 11).  On February 16, 2021, the Court denied the Motion to Dismiss (ECF No. 5) as moot because Plaintiff had filed an Amended Complaint.  The Court directed the Defendant to file a response to Plaintiff's Amended Complaint.

On February 19, 2021, Defendant filed a Motion to Dismiss (ECF No. 13) and an Answer and Affirmative Defenses to the Amended Complaint (ECF No. 15). On July 7, 2021, Defendant filed a Motion for Summary Judgment and a Memorandum in Support (ECF Nos. 31, 32). On July 12, 2021, the Court granted Defendant's Motion to Dismiss as to Counts One, Five, and Six, denied the Motion as to Counts Three, Four, Seven, Eight, Nine, Ten, and Eleven, and granted in part and denied in part as to Count Two (ECF Nos. 33, 34).  On July 21, 2021, Plaintiff filed a Response in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 35).  (ECF No. 35). On July 27, 2021, Defendant filed a Reply to Plaintiff's Response (ECF No. 37).  On August 6, 2021, Plaintiff filed a corrected and refiled version of her Response in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 40).[6]

### III. LEGAL STANDARD

Summary judgement is appropriately granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment "bears the initial burden of demonstrating the absence of any genuine issue of material fact." *DiSciullo v. Griggs & Co. Homes*, 2015 WL 6393813, at *4 (E.D.N.C. Oct. 22, 2015).  The burden then "shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).

When the record contains no direct evidence of discrimination or retaliation—as here—a plaintiff must rely on the *McDonnell Douglas* burden-shifting framework as a means of

---

[6] The Court will refer to Plaintiff's corrected and refiled Response in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 40) as the operative brief.

establishing her claims. *Lighty v. Gates Hudson & Assocs., Inc.*, No. 119CV1520, 2021 WL 4439970, at *7 (E.D. Va. Sept. 28, 2021) (citing *Briscoe v. W.A. Chester, LLC*, No. 17-1675, 2019 WL 2395310, at *3 (D. Md. June 5, 2019)); *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243 (4th Cir. 2015) (finding that the *McDonnell Douglas* framework was still applicable to retaliation claims).   Under the *McDonnell Douglas* burden-shifting framework, "the plaintiff must first establish a prima facie discrimination [or retaliation]." *Conyers v. Virginia Hous. Dev. Auth.*, 927 F. Supp. 2d 285, 292 (E.D. Va. 2013) (citations omitted).   After a plaintiff has met her initial burden in establishing a prima facie case of discrimination or retaliation, "the burden of production shifts to the defendant to provide a legitimate reason for the adverse action." *Id.* (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).   "Once a defendant meets this burden of production, the plaintiff must shoulder the burden of proving that the defendant's reasons for taking adverse action against him were pretextual." *Lighty*, 2021 WL 4439970 at *8.

## IV. ANALYSIS

### A. Count Two: Disparate Treatment on the Basis of Race and Ethnicity in Violation of 42 U.S.C. § 1981

"To establish a *prima facie* disparate treatment claim under . . . § 1981, the plaintiff must show: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) that similarly-situated employees outside the protected class received more favorable treatment." *Cepada v. Bd. of Educ. of Baltimore Cty.*, 814 F. Supp. 2d 500, 510 (D. Md. 2011) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

The parties generally agree that Plaintiff has established her membership in a protected class as well as satisfactory job performance. (Mem. Supp. Mot. Summ. J. at 18; Pl.'s Resp. at 13.) Thus, we turn to the second element that appears to be the focal point of the parties' disagreement,

10

adverse employment actions. Plaintiff alleges several adverse employment actions: (1) she was removed from her former PhD Student's dissertation committee; (2) she received a written reprimand from EVMS; (3) her receipt of a negative performance evaluation; (4) she had students steered away from her courses and mentorship; (5) the deprivation of Plaintiff's employment benefit by permitting Dr. Svyatova to misappropriate her EDTA disclosure; and (6) EVMS's removal of Dr. Svyatova from Plaintiff's lab but permitting Svyatova to take Plaintiff's research with her. (Mem. Supp. Mot. Summ. J. at 19-20; Pl.'s Resp. at 13-14; Am. Compl. ¶¶ 17, 20, 24, 27.)  The Court previously dismissed Plaintiff's claims as to the written reprimand under Count Two. (July 12, 2021 Mem. Op. at 7, ECF No. 33 ("Therefore, the reprimand will not be considered an adverse employment action, and this event will not survive the Motion to Dismiss as to Count Two").)  Accordingly, the Court examines the remaining purported adverse actions.

"An adverse employment action is a discriminatory act that adversely affects the 'terms, conditions, or benefits' of employment." *Cepada*, 814 F. Supp. 2d at 510 (quoting *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). "Typically, an adverse action includes 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'" *Id.* (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir.1999)).

### 1. Removal from PhD Committee

Defendant argues that Plaintiff's removal from Dr. Svyatova's dissertation committee fails to rise to the level of having a significant detrimental effect on the terms and conditions of her employment. (Mem. Supp. Mot. Summ. J. at 20.)  Defendant contends that Plaintiff has not alleged, much less provided evidence, that she suffered a demotion or decrease in pay as a result of her removal from Dr. Svyatova's dissertation committee. (*Id.*)  Additionally, Defendant argues

that Plaintiff admits that she has no evidence that her removal from the dissertation committee was based on her race or origin. (*Id.*)

Plaintiff has failed to allege or provide evidence that her removal from the dissertation committee resulted in any significant changes in employment status. Indeed, Plaintiff's tenure status was not removed and her title, pay, and benefits were unaffected by the removal. (ECF No. 32-26.) It is clear that Plaintiff was dissatisfied with her removal from the dissertation committee but "an employee's dissatisfaction with this or that aspect of work does not mean an employer has committed an actionable adverse action." *James*, 368 F.3d at 377.  Therefore, the Court finds that Plaintiff's removal from the dissertation committee, without adverse effect to Plaintiff's employment status, does not constitute an adverse employment action.

### 2. Negative Performance Evaluation

Defendant argues that Plaintiff's FY 2019 Evaluation was not an adverse employment action because the evaluation had no significant effect on the terms or conditions of her employment, including her compensation. (Mem. Supp. Mot. Summ. J. at 21.)  The Court agrees. While a negative performance evaluation could tangibly affect the terms and conditions of employment, such an evaluation "is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Shetty v. Hampton Univ.*, No. 4:12CV158, 2014 WL 280448, at *10 (E.D. Va. Jan. 24, 2014).  In her Amended Complaint, Plaintiff alleges that the negative performance evaluation in August 2019 reduced the salary that she would have otherwise received. (Am. Compl. ¶ 24.)  However, Plaintiff offers no evidence to support this contention.  To the contrary, as stated by Dr. Kerry during her sworn deposition, performance reviews are not considered in compensation decisions. (Kerry Dep. 21:17-23:19, ECF No. 32-38 at 3-5.)  Here, Plaintiff did not experience any alterations to the terms

or conditions of her employment based on the negative performance evaluation.  As such, the Court finds that the negative performance review is not an adverse employment action.

### 3. Students Steered Away from her Courses and Mentorship

Plaintiff asserts in her Amended Complaint that students were continuously steered away from her courses and mentorship. (Am. Compl. ¶ 24.)  However, neither party addresses this assertion in their briefs in the context of disparate treatment, and Plaintiff provides no evidence to support this argument.[7] As such, Plaintiff's claim that EVMS continuously steered students away from her courses or mentorship, even if true, would not constitute an adverse employment action.

### 4. Deprivation of Plaintiff's Employment Benefit by permitting Dr. Svyatova to misappropriate her EDTA disclosure

Plaintiff argues that a benefit of her employment was the right to her intellectual property once EVMA disclaimed interest in it. (Pl.'s Resp. at 13.)  Plaintiff asserts that EVMS deprived her of her employment benefit by permitting Dr. Svyatova to misappropriate the EDTA invention after disclaiming interest in 2018. (*Id.* at 13-14.)  Plaintiff claims that it was unprecedented to permit a student to claim ownership of an invention created under a principal investigator, using the principal investigator's lab and funds, and for the same invention that the principal investigator had already disclosed. (*Id.*)  EVMS allegedly exacerbated the adverse action by sequestering Plaintiff's lab notebooks, giving them to Dr. Svyatova, and discussing Plaintiff's invention with Dr. Svyatova, thereby foreclosing Plaintiff's ability to protect her intellectual property. (*Id.* at 14.)

Defendant argues that Plaintiff has offered no supporting evidence or authority that her purported right to her intellectual property constitutes an employment benefit. (Def.'s Reply at 4.) Even so, Defendant asserts that the rights to the EDTA invention was not assigned to Plaintiff by

---

[7] Defendant addresses this argument briefly in the context of retaliation, and Plaintiff makes no mention of this argument in her reply.

Defendant until November 25, 2019, a year after her exchange with Mr. DiMarco and after the time period during which she alleges that Defendant permitted Dr. Svyatova to misappropriate the purported trade secrets. (*Id.*)  Additionally, Plaintiff admitted during her deposition that the EDTA invention belonged to Defendant prior to November 25, 2019, pursuant to the written assignment between the parties. (*Id.* at 5 (citing Tang Dep. 150:3-152:19, ECF No. 32-3 at 15.)  Despite this testimony, Plaintiff attached a three-page sworn declaration to her Response, which falsely represents that as of November 26, 2018, the EDTA invention belonged to her. (*Id.* (citing ECF No. 40-27 ¶ 11).)  Defendant asserts that Plaintiff's claim that her purported trade secret constitutes an employment benefit that she was deprived of is not only meritless, it is a factual impossibility. (*Id.*)

Plaintiff's purported loss of her right to her intellectual property does not constitute an adverse employment action because Plaintiff fails to assert any authority to support the claim that the right to her intellectual property was an actual employment benefit. Further, as asserted by Defendant, Plaintiff did not own the EDTA invention at the time of the alleged misappropriation. Plaintiff cites to her claims in the Amended Complaint that Defendant permitted Dr. Svyatova "to publish a dissertation misappropriating Plaintiff's intellectual property in August 2019 over Plaintiff's protest as well as allowing and condoning and/or assisting the student in filing for United States patent protection as well as patent protection in other countries." (Am. Compl. ¶ 17.) However, the email that Plaintiff references in support of this claim from November 26, 2018, states that "[b]ased upon the review EVMS will not be pursuing patent protection for your October 12th invention disclosure." (ECF No. 32-10 at 1.)  EVMS did not assign the EDTA invention to

Plaintiff until November 25, 2019.[8] (ECF No. 32-11 at 1.)  Furthermore, as stated in Plaintiff's

Employment Agreement, Plaintiff agreed that any of her ideas and inventions during the period of

her employment shall be assigned to EVMS. (*Id.* at 3.)  Accordingly, during Dr. Svyatova's August

2019 dissertation—when Dr. Svyatova allegedly misappropriated Plaintiff's EDTA invention—

the EDTA invention belonged to Defendant. (*See* Compl. ¶ 17; ECF No. 40-23 at 1.)  Hence, the

Court finds that EVMS did not deprive Plaintiff of her purported employment benefit and that

EVMS did not take adverse employment action against Plaintiff by allowing Dr. Svyatova to

complete her dissertation.

### 5. EVMS's Removal of Dr. Svyatova From Plaintiff's Lab but Permitting Dr. Svyatova to take Plaintiff's Research

Plaintiff's final purported adverse employment action under her discrimination claim is

that EVMS removed Dr. Svyatova from Plaintiff's lab but permitted Dr. Svyatova to take

Plaintiff's research with her. (Pl.'s Resp. at 14.)  However, this adverse employment action claim

is novel as Plaintiff failed to make this allegation in her Amended Complaint and did not mention

this occurrence in support of her discrimination claim in any of Plaintiff's other briefings. The

Fourth Circuit has held that "[a] plaintiff may not amend her complaint through argument in a brief

opposing summary judgment." *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x

556, 563 (4th Cir. 2008) (quoting *Gilmour v. Gates, McDonald & Co*., 382 F. 3d 1312, 1315 (11th

Cir. 2004)); *Cloaninger ex rel. Est. of Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009)

("a plaintiff may not raise new claims after discovery has begun without amending his complaint");

*Hawke v. Discovery Commc'ns, LLC*, No. 17–542, 2017 WL 2964127, at *2 (D. Md. July 12,

2017) (limiting analysis on summary judgment to three specific allegedly defamatory statements

---

[8] While Plaintiff's signature is dated March 31, 2020, the effective date of the agreement November 25, 2019. (ECF No. 32-11.)  During deposition, Plaintiff stated that EVMS did nothing to keep her from signing the Invention Assignment Agreement. (Tang Dep. 537:1-16, ECF No. 32-3 at 41.) *See supra* note 3.

in the complaint even though the complaint "also vaguely reference[d] 'other similar type statements'"). Yet, Plaintiff's assertion of this new claim of adverse employment action attempts to do just that. Consequently, Plaintiff is unable to assert this occurrence as an adverse employment action in support of her discrimination claim.

Plaintiff has failed to establish a genuine issue of material fact as to her adverse employment action claims and, based on the undisputed facts, none of the actions asserted constitute an adverse employment action. Accordingly, Defendant is entitled to summary judgment in its favor on Plaintiff's disparate treatment claim under 42 U.S.C. § 1981.

### B. Counts Three and Four: Retaliation in violation of Title VII and 42 U.S.C. § 1981

To establish a *prima facie* case for retaliation, a plaintiff must show "(1) that [s]he engaged in a protected activity; (2) that [her] employer took an adverse employment action against [her]; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). The elements of retaliation under § 1981 and Title VII are the same.[9] *Honor v. Booz-Allen Hamilton, Inc.*, 383 F. 3d 180, 188 (4th Cir. 2004) (using the same Title VII retaliation elements in establishing a prima facie claim of retaliation under 42 U.S.C. § 1981).

### 1. Protected Activity

Plaintiff lists various occasions on which she engaged in protected activity by protesting discrimination from May 2019 through the pendency of her EEOC charge on August 20, 2020 and the subsequent filing of this lawsuit. (Pl.'s Resp at 16-17.) Defendant argues that Plaintiff's alleged

---

[9] Defendant argues that Plaintiff's retaliation claim is time-barred because the acts took place more than 300 days before Plaintiff filed her EEOC charge. (Mem. Supp. Mot. Summ. J. at 16-17.) However, the Court explained in the July 12, 2021 Opinion that the Court can consider the Plaintiff's retaliation claims under Title VII without determining whether she filed an EEOC Charge. (July 12, 2021 Op. at 8-9.)

discrimination complaints do not constitute protected activity because Plaintiff failed to provide any information connecting the purported acts of discrimination to her race, sex, or national origin. (Mem. Supp. Mot. Summ. J. at 10-11.)  There are two forms of protected activity recognized under Title VII: "(1) 'opposition' activity, essentially, 'oppos[ing] any practice made an unlawful employment practice'; and (2) 'participation' activity, i.e., 'ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Betourney v. GKN Driveline Newton, LLC*, No. 517CV00221, 2019 WL 2881558, at *5 (W.D.N.C. July 1, 2019) (quoting 42 U.S.C. § 2000e-3(a)) (citations omitted).  Outside of the EEOC charge, Plaintiff essentially alleges that she engaged in opposition activity by "expressly complaining of discrimination." (Pl.'s Resp. at 17.)   The Fourth Circuit has "articulated an expansive view of what constitutes oppositional conduct, recognizing that it encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Stennis v. Bowie State Univ.*, 716 F. App'x 164, 167 (4th Cir. 2017) (quoting *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015)).  However, "the employee must complain about activity that constitutes unlawful discrimination under Title VII, rather than about unfair treatment generally." *Conyers*, 927 F. Supp. 2d at 295 (gathering cases).

Here, Plaintiff's complaints to various EVMS faculty members fail to mention activity that is unlawful under Title VII[10] until her August 14, 2019 email to Dr. Wasilenko and Dr. Purcell.

---

[10] Plaintiff cites letters and emails sent on May 2, 2019, May 3, 2019, May 30, 2019, June 24, 2019, and June 27, 2019, as oppositional activity. (Pl.'s Resp. at 17.)  However, the communications mention discrimination or retaliation generally without mention of race, sex, or any other protected status under Title VII. *Gray v. Walmart Stores, Inc.*, No. 7:10-CV-171, 2011 WL 1831780, at *7 (E.D.N.C. May 12, 2011) (finding no protected activity where the plaintiff's emails to management did not mention racial discrimination, harassment, or retaliation); *Richardson v. Richland Cnty. Sch. Dist. No. One*, 52 Fed. Appx. 615, 617 (4th Cir. 2002) (unpublished) (holding that a plaintiff could not show that she engaged in protected activity because she did not present evidence that she informed her employer that her complaints were based on race or age discrimination). The main focus of Plaintiff's communications are Dr. Svyatova's perceived unethical acts related to EDTA.

(ECF No. 40-23.) In the August 14, 2019 email, Plaintiff asks "[w]hy EVMS is so racist and dishonest," and accuses EVMS of violating "so many American values, norms, institutional policy, and AAMC/LCME/EEOC regulations." (*Id.*) Plaintiff's mention of racism and EEOC regulations was in clear opposition of perceived racial discrimination that is prohibited under Title VII. The same can be said for Plaintiff's September 27, 2019 email to Dr. Mylona, Dr. Purcell, and Dr. Homan, Plaintiff's January 15, 2020 grievance against her FY19 Evaluation, and her February 5, 2020 email to Dr. Mylona complaining of race-based discrimination. (ECF No. 40-26 at 1; ECF No. 32-35 at 1; ECF No. 40-13.) Additionally, Plaintiff's EEOC charge, filed March 24, 2020, constitutes protected activity.

### 2. Materially Adverse Action

The Supreme Court has held that in order to establish an adverse employment action in the context of a retaliation claim, "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted). "The Supreme Court emphasized that the 'materiality' requirement was necessary to ensure that only significant harms would be actionable." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213–14 (4th Cir. 2019) (citing *Burlington N.*, 548 U.S. at 68-70.)

> [T]he standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint. By focusing on the materiality of the challenged action, and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination.

*Burlington N.*, 548 U.S. at 69-70.  Here, Plaintiff alleges a number of actions taken by EVMS in support of her retaliation claims.  Since the Court has found that Plaintiff's protected activities began on August 14, 2019, we examine only the actions that took place after August 14, 2019. Plaintiff alleges that EVMS (1) gave her a negative performance evaluation; (2) denied her grievance of her written reprimand; and (3) denied her grievance of her performance evaluation.[11] (Pl.'s Resp. at 18.)   First, Plaintiff alleges that Dr. Kerry gave her a negative performance evaluation on August 23, 2019. (*Id.*)  While adverse actions are not limited to actions affecting employment terms and conditions, "this is still a heavy burden for the plaintiff: the alleged adverse action must be material." *Csicsmann v. Sallada*, 211 F. App'x 163, 168 (4th Cir. 2006) (citing *Burlington N.*, 548 U.S. at 62-63). Here, Plaintiff fails to show that the negative performance evaluation was materially adverse.  While Plaintiff mentions that the performance evaluation "is part of the employee's permanent file and a component in future employment decisions," Plaintiff fails to further discuss or explain these "future employment decisions" or how the negative reviews would have negatively impacted them. Additionally, although Plaintiff's FY 19 performance evaluation had some negative comments, portions of the evaluation also stated that Plaintiff "provided outstanding service to the broader scientific community through her service on numerous grant review panels" and mention her success at "obtaining extramural funding for her breast cancer work from the DoD for the next three years." (ECF No. 32-36 at 4.)  The FY 19 evaluation further commended Plaintiff's "contributions to EVMS" and hard work in assembling "an outstanding ream of investigators who have been successful at obtaining extramural funding

---

[11] Plaintiff also alleges that she was removed from various departmental committees. (Pl.'s Resp. at 18-19.) However, Plaintiff makes this allegation for the first time in her Response to Defendant's Motion for Summary Judgment. Plaintiff fails to mention that she was allegedly removed from departmental committees in her EEOC charge, her Amended Complaint, and does not even reference it in her response to Defendant's Motion to Dismiss. Once again, Plaintiff cannot raise new claims of retaliation at this stage of the action.  *Cloaninger ex rel. Est. of Cloaninger*, 555 F.3d at 336 ("a plaintiff may not raise new claims after discovery has begun without amending his complaint").

for her innovative work." (*Id.* at 5,7.)  Plaintiff has not demonstrated that the negative reviews in addition to the outstanding positive reviews that she received would dissuade a reasonable employee from making or supporting a charge of discrimination or that the negative evaluation caused injury or harm. *Staggers v. Becerra*, No. CV 21-0231, 2021 WL 5989212, at *21 (D. Md. Dec. 17, 2021) (Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.") (citing *Burlington N.*, 548 U.S. at 67). Accordingly, Plaintiff's negative performance review does not constitute a materially adverse action.

Next, Plaintiff alleges that EVMS denied Plaintiff's grievances of the written reprimand and her performance evaluation. As discussed above, Plaintiff's negative performance evaluation does not constitute a materially adverse employment action. The same is true regarding the written reprimands. *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 603 (D. Md. 2011) ("letter of counseling" that offered constructive criticism and cautioned that discipline could follow, but did not implement any discipline, was not materially adverse action). Plaintiff has not offered any authority to suggest that EVMS's denial of Plaintiff's grievances, which essentially maintains the status quo, would dissuade a reasonable employee from making or supporting a charge of discrimination.   Thus, Plaintiff has not shown any harms or injuries resulting from the grievance denials. *Colfield v. Safeway Inc.*, No. CV WMN-12-3544, 2016 WL 1242592, at *15 (D. Md. Mar. 30, 2016) ("Even under that lower standard, the assignment of less desirable tasks than Plaintiff was used to or the issuance of written warnings would not rise to the level of adverse employment actions.").   As such, the Court finds that the grievance denials do not constitute materially adverse employment actions. Having concluded that there was no materially adverse action, it is unnecessary for the

Court to consider whether there was a causal connection.[12] Accordingly, Plaintiff's Title VII and

42 U.S.C. § 1981 retaliation claims must fail as a matter of law, and EVMS is entitled to summary

judgment as to Count Three and Four.

### C. Counts Seven and Eight: Violations of the Defend Trade Secrets Act and the Virginia Uniform Trade Secrets Act

The Defend Trade Secrets Act ("DTSA") provides that "[a]n owner of a trade secret that

is misappropriated may bring a civil action . . . if the trade secret is related to a product or service

used in, or intended for use in, interstate or foreign commerce." *Space Sys./Loral, LLC v. Orbital*

*ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D. Va. 2018) (citing 18 U.S.C. § 1836 (b)(1)).   Trade

secrets under the DTSA are defined as "all forms and types of financial, business, scientific,

technical, economic, or engineering information . . ." that "the owner thereof has taken reasonable

measures to keep . . . secret." *Id.* To prove misappropriation under the DSTA, Plaintiff must

establish that (1) she owns a trade secret; (2) the trade secret was misappropriated; and (3) the

trade secret implicates interstate or foreign commerce. *Id.*

Plaintiff alleged in her Amended Complaint that EVMS allowed misappropriation of her

trade secret, EDTA, from October 2018 through August 2019. (Am. Compl. ¶¶ 10-17.)  EVMS

argues that Plaintiff's trade secret claims fail because Plaintiff cannot establish ownership of the

trade secrets. (Mem. Supp. Mot. Summ. J. at 27.)   EVMS asserts that the undisputed facts

demonstrate that EVMS owned the trade secret during the time period in which Plaintiff alleges

that the trade secrets were misappropriated, October 2018-August 2019. (*Id.*)  EVMS points to the

---

[12] Additionally, Dr. Calhoun denied Plaintiff's grievance of the written reprimand on August 16, 2019 but was not sent the August 14, 2019 email wherein Plaintiff complained of racism at EVMS. (ECF Nos. 32-34, 40-23.) Plaintiff has not presented any evidence that Dr. Calhoun was aware of the August 14, 2019 email at the time that she denied Plaintiff's grievance. Further, Dr. Calhoun circulated a draft of her Notice of Findings detailing her denial of Plaintiff's grievance on July 16, 2019, well before Plaintiff engaged in oppositional activity. (ECF No. 40-3.)

Employment Agreement between Plaintiff and EVMS wherein Plaintiff agreed that "during the term of th[e Employment Agreement], any inventions, improvements, ideas, or suggestions made or originated by [Dr. Tang] . . . shall be assigned to EVMS. . ." (*Id.* at 28 (quoting ECF No. 32-2).)   Further, the binding Participation/Confidential Non-Disclosure Agreement between the parties provides that "[e]ach Invention shall be deemed to be the property of EVMS; each such Invention and related rights required to obtain Letters Patent shall be assigned by the Inventor to EVMS." (*Id.* (quoting ECF No. 32-2).)   EVMS argues that prior to November 25, 2019, the effective date of the assignment of the Tang Invention Disclosure from EVMS to Plaintiff, EVMS owned all purported trade secrets developed by Plaintiff during her employment. (*Id.*)   Thus, EVMS asserts that it is legally impossible for EVMS to have misappropriated Plaintiff's trade secrets. (*Id.* at 29.)

Plaintiff argues that she had an ownership interest in the purported trade secrets because under the EVMS policy and her Employment Agreement, EVMS has the right to assert ownership of intellectual property sometime after disclosure but may decline to do so. (Pl.'s Resp. at 22-23.) As such, she argues that her ownership or lack thereof is not undisputed. (*Id.*)   Plaintiff further argues that she does not need to establish ownership as a matter of law in order to prevail on her claims because possession is sufficient to state a cause of action. (*Id.* at 23.)   Plaintiff cites *Advanced Fluid Sys., Inc. v. Huber* and *DTM Rsch., L.L.C. v. AT&T Corp.*, in support of her argument. (*Id.* (958 F.3d 168, 177 (3rd Cir. 2020); 245 F.3d 327, 331 (4th Cir. 2001)).)   Both cases essentially explain that possession, and not "ownership in the sense of fee simple absolute title," is sufficient to state a cause of action. (*Id.* (quoting *DTM Rsch*, 245 F.3d at 332).)   EVMS argues that Plaintiff's reliance on *Advanced Fluid Sys.* and *DTM Rsch.* is misplaced. (Def.'s Reply at 16-17.)   EVMS argues that the instant case is distinguishable because the language in Plaintiff's

22

Employment Contract explicitly assigns the license of each invention to EVMS. (*Id.* at 17.)  EVMS points to the Court's explicit acknowledgement in *Advanced Fluid Sys.* that "had the Agreement contained an explicit license for [a party's] benefit, any dispute about lawful possession could have been avoided." (*Id.* (958 F.3d at 179; s*ee also DTM Rsch.*, 245 F.3d at 329 ("The complaint alleges that AT&T misappropriated DTM's trade secrets *during the course of contract negotiations*.") (emphasis added)).)  Thus, Plaintiff's Employment Contract and EVMS's explicit license to intellectual property advanced at EVMS precludes Plaintiff from claiming that she had a right to secrecy in her research. (*Id.*)

The Court finds that while possession is sufficient to bring a claim of misappropriation of a trade secret, Plaintiff's Employment Agreement precludes her from making this assertion. In *Advanced Fluid Sys.*, the Court notes that the district court correctly distinguished *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, No. 09-181, 2011 WL 2116989 (D. Haw. May 25, 2011), from the circumstances surrounding *Advanced Fluid Sys.* 958 F.3d at 179 n.9.  In *BlueEarth*, the court concluded that the misappropriation claim failed when plaintiff "was no longer legally in possession of the trade secrets because it had transferred, without reservation, all of the relevant confidential information and trade secrets to [the defendant]." 2011 WL 2116989 at *21. Similarly, Plaintiff's Employment Agreement and Participation/Confidential Non-Disclosure Agreement clearly assign "every trade secret, idea, know how, discovery, or invention (together hereinafter referred to as 'Invention')" to EVMS. (ECF No. 32-2 at 9.)  Plaintiff even confirmed the fact that EVMS owned the intellectual property during her deposition. When asked why she submitted the EDTA invention disclosure, Plaintiff answered, "to protect EVMS IP." (Tang Dep. 150:3-152:19, ECF No. 32-3 at 15.)  When asked whether she "understood even as of October 12th, 2018 that this was EVMS' IP," Plaintiff responded that "[t]his was EVMS IP at that date."

(*Id.*)   Given the transfer effectuated by Plaintiff's Employment Agreement and Participation/Confidential Non-Disclosure Agreement, Plaintiff cannot now claim lawful possession of the trade secrets at issue. Therefore, Plaintiff cannot establish ownership or lawful possession of a trade secret as required for her claim of misappropriation under the DSTA.

To satisfy a claim of misappropriation under the Virginia Uniform Trade Secrets Act ("VUSTA"), a plaintiff must establish: "(1) the existence of a trade secret and (2) the Defendant's 'misappropriation' of the trade secret from Plaintiff." *Anderson v. Fluor Intercontinental, Inc.*, No. 1:19-CV-0289, 2021 WL 837335, at *19 (E.D. Va. Jan. 4, 2021) (citing *MicroStrategy Inc. v. Li*, 601 S.E.2d 580, 588 (Va. 2004)).  While "[t]he determination of whether a trade secret exists is generally a question of fact to be determined 'from the greater weight of the evidence,'" the parties assume existence of a trade secret. *Signature Flight Support, LLC v. Carroll*, No. 7:20-CV-00739, 2021 WL 4352564, at *3 (W.D. Va. Sept. 24, 2021) (quoting *Trident Prod. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 778 (E.D. Va. 2012)).  Nonetheless, Plaintiff's misappropriation claim under the VUSTA—and the DSTA— also fails because Plaintiff cannot establish, as a matter of law, that EVMS misappropriated the trade secret from Plaintiff. To demonstrate misappropriation of a trade secret, Plaintiff must establish two elements:

> (1) that the defendant acquired, disclosed, or used a trade secret developed by the plaintiff through improper means (namely, without express or implied consent); and (2) that the defendant knew or had reason to know that its knowledge of the trade secret was either acquired under circumstances giving rise to a duty to maintain its secrecy or derived through a person owing such a duty to the plaintiff.

*Trident Prod. & Servs., LLC*, 859 F. Supp. 2d at 780.  Here, there is no dispute that EVMS acquired the trade secret through express consent via Plaintiff's Employment Agreement and Participation/Confidential Non-Disclosure Agreement. (ECF No. 32-2.)  The Supreme Court of

Virginia has held that "[t]here can be no misappropriation where acquisition, disclosure, and use of a trade secret have been expressly authorized by contract." *Babcock & Wilcox Co. v. Areva NP, Inc.*, 788 S.E.2d 237, 260 (Va. 2016); *see also Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016) (finding that the defendant "did not disclose or use the trade secrets in violation of the Trade Secrets Act" because at the time of the contract award, he "was [contractually] authorized to use the information").  Indeed, "[a] valid contractual acquisition can hardly be characterized as 'improper means. . . .'" 788 S.E.2d at 260.  Here, Plaintiff does not challenge the validity of her contract with EVMS. In fact, during her deposition, Plaintiff confirmed the validity of the agreement that allotted all of Plaintiff's inventions as property of EVMS, referring to the trade secret as "EVMS property." (Tang Dep. 150:3-152:19, ECF No. 32-3 at 15.)  Accordingly, Plaintiff cannot establish misappropriation under the VUSTA.  Thus, her trade secret claims fail, and EVMS is entitled to summary judgment as to Counts Seven and Eight.[13]

## V. CONCLUSION

For the reasons detailed above, Defendant's Motion for Summary Judgment (ECF No. 31) will be granted on all counts.

An appropriate Order shall issue.

/s/ _____

Roderick C. Young
United States District Judge

Richmond, Virginia
Date: March 30, 2022

---

[13] Defendant also argued that since Plaintiff shared the EDTA research with people outside of EVMS including Dr. Anthony Fauci and other researchers across various institutions, her claim should fail. (Mem. Supp. Mot. Summ. J. at 5, 27 n.7 (*Advanced Computer Servs. of Michigan, Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 370 (E.D. Va. 1994) ("Trade secrets also do not survive when the alleged owner fails to take 'reasonable precautions' to keep the information secret.")).) However, Plaintiff shared the EDTA research in April of 2020, after EVMS assigned the invention to Plaintiff and outside of the timeframe that Plaintiff alleged that the misappropriation occurred. (*See* ECF No. 32-12.)  Hence, this argument has no bearing on the Court's analysis of Plaintiff's misappropriation claim.