IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

AMY H. TANG,                        )
      Plaintiff,                    )
                       )
            v.                          )          Civil Action No. 2:20CV575 (RCY)
                       )
EASTERN VIRGINIA MEDICAL            )
SCHOOL,                             )
      Defendant.                    )
_____)

**MEMORANDUM OPINION**

      This is an employment discrimination and trade secret misappropriation action brought by Plaintiff Amy H. Tang, wherein Plaintiff alleged that Defendant unlawfully discriminated against her and misappropriated her intellectual property. The Court previously awarded summary judgment to Defendant, which the Fourth Circuit has now affirmed. The case is before the Court on Defendant's Motion for Attorneys' Fees and Costs. The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny Defendant's Motion.

## I. FACTUAL AND PROCEDURAL HISTORY

### A.    Factual Background

      On December 18, 2009, Defendant Eastern Virginia Medical School ("EVMS") hired Plaintiff Amy Tang as an Assistant Professor in the Department of Microbiology and Molecular

Cell Biology.  Mem. Op. 1 ("Mot. Summ. J. Op."), ECF No. 46.[1]  When Plaintiff was hired, she

signed a Standard Faculty Employment Agreement containing the following terms:

> INVENTIONS; PATENTS. The Employee agrees that, during the term of this Agreement, any inventions, improvements, ideas, or suggestions made or originated by the Employee, or any patents obtained by him/her, at or during any period of time that the Employee is engaged in performing services for EVMS, or as a direct or indirect result of such services, or by and through the use of the facilities or equipment of EVMS, shall be assigned to EVMS, or a non-profit organization designated by it and established for its benefit, and shall be governed by the patent policy established by EVMS and by applicable governmental laws and regulations as may be adopted and/or amended from time to time. Ideas or works conceived, initiated or improved upon during Employee's employment but completed thereafter, shall also be subject to this section. Employee further agrees to execute the EVMS Participation/Confidential Non-Disclosure Agreement (and any attachments thereto), a copy of which is attached hereto as Exhibit A and incorporated herein.

Id. at 1–2.  Plaintiff also signed a Participation/Confidential Non-Disclosure Agreement that

provided: "Each Invention shall be deemed to be the property of EVMS: each such Invention and

related rights required to obtain Letters Patent shall be assigned by the Inventor to EVMS."  Id. at

2.  In sum, the Agreements assigned all intellectual property created by Plaintiff during the course

of her employment to EVMS ("IP Policy"); however, EVMS policy permitted employees to

request exemptions from the IP Policy through the EVMS Patent Office.  See id.

On March 2, 2018, Plaintiff sent an email to her mentee, Elizaveta Svyatova ("Dr.

Svyatova"), informing Dr. Svyatova that Plaintiff intended to request an exemption from the IP

Policy and file a patent application for her purported invention of Ethylenediaminetetraacetic Acid

("EDTA").  Id.  Dr. Svyatova had assisted Plaintiff with her work on EDTA; thus, Plaintiff asked

Dr. Svyatova to refrain from submitting abstracts relating to EDTA until the patent application

process was completed.  Id.

---

[1] The Court has already explained the relevant, undisputed facts underlying this matter in its previous Memorandum Opinion on Defendant's Motion for Summary Judgment, Mot. Summ. J. Op., ECF No. 46.

Notwithstanding Plaintiff's request, on October 13, 2018, Dr. Svyatova presented research at a "research day" event that contained an explicit reference to EDTA. *Id.* Plaintiff noticed the reference to EDTA in Dr. Svyatova's materials and instructed Dr. Svyatova to redact portions of the poster referencing EDTA. *Id.*

Later that day, Plaintiff sent an email to Margaret Morris, chair of the EVMS faculty grievance committee, explaining the research day incident and requesting guidance on how to proceed against Dr. Svyatova for what Plaintiff described as a "possible violation of PhD student honor code." *Id.* at 2–3. Immediately thereafter, Plaintiff initiated her request for exemption from the IP Policy.[2] *Id.* at 3.

Approximately three months after the research day incident, on January 26, 2019, Dr. Svyatova filed a complaint with EVMS alleging that Plaintiff was fostering a hostile work environment and had made inappropriate comments to and about Dr. Svyatova. *Id.* A few weeks later, on February 6, 2019, EVMS's Executive Director of Human Resources, Matthew Schenk, met with Plaintiff to discuss Dr. Svyatova's complaint and advised Plaintiff that she was required to maintain appropriate work boundaries with students and employees. *Id.* at 3–4. At the time, Plaintiff was serving as chair of Dr. Svyatova's dissertation committee; however, in light of the Dr. Svyatova's complaint, Mr. Schenk instructed that a different member of Dr. Svyatova's dissertation committee would be appointed as chair. *See id.* at 4. Mr. Schenk also instructed Plaintiff that she should include Melissa Scott, Director of Student Rights and Responsibilities, in any future communications between Plaintiff and Dr. Svyatova. *Id.* Plaintiff communicated to Mr. Schenk that she felt that her removal as chair of Dr. Svyatova's dissertation committee was punitive and that she intended confer with other faculty members about the removal. *Id.* Plaintiff

---

[2] Just over one month later, on November 26, 2018, EVMS notified Plaintiff that it would not be pursuing patent protection for Plaintiff's EDTA invention. Mot. Summ. J. Op. 3. One year later, on November 25, 2019, EVMS reassigned the rights to Plaintiff's EDTA invention to Plaintiff. *Id.*

also informed Mr. Schenk that she would report Dr. Svyatova to the honor counsel and wanted to remove Dr. Svyatova from Plaintiff's lab because of the research day incident. *Id.* Eventually, Dr. Svyatova was removed from Plaintiff's lab, but EVMS permitted Dr. Svyatova to take Plaintiff's research with her. *Id.* at 15.

On February 8, 2019, Plaintiff sent an email to EVMS faculty members attempting to call an emergency academic meeting to discuss her issues with Dr. Svyatova and seek advice from her colleagues. *Id.* at 4. Mr. Schenk responded to Plaintiff's email stating that Plaintiff's email was not the appropriate forum for the discussion. *Id.*

Despite Mr. Schenk's warning, the very next day, on February 9, 2019, Plaintiff sent another email to EVMS faculty regarding her removal as chair and the allegedly "highly punitive" nature of EVMS's actions. *Id.* Mr. Schenk once again responded to Plaintiff's email explaining that the meeting was "not appropriate to discuss issues that [were] clearly HR related" and advising Plaintiff that, should she proceed with the meeting, "corrective action may be taken." *Id.* at 4–5.

The day after Mr. Schenk's second warning, on February 10, 2019, Plaintiff sent an email to Mr. Schenk, Josephine Wiley of EVMS's General Counsel's office ("Ms. Wiley"), and other colleagues, asserting that EVMS was not properly handling Dr. Svyatova's "extreme unprofessional and dishonorable conduct," and that EVMS had engaged in a "persistent persecution pattern" against Plaintiff. *Id.* at 5.

On February 11, 2019, Plaintiff submitted formal scientific and research misconduct allegations against Dr. Svyatova related to the research day event and purported misuse of Plaintiff's EDTA invention. *Id.* On February 18, 2019, Mr. Schenk informed Plaintiff that her research misconduct complaint was untimely; Mr. Schenk reassured Plaintiff, however, that the EVMS Research Office was investigating Plaintiff's scientific misconduct complaint. *Id.*

On April 3, 2019, Plaintiff was informed that the Research Office did not find that Dr. Svyatova had committed falsification, fabrication, or plagiarism.  *Id.* at 6.  Plaintiff expressed her disagreement with the conclusion of the investigation, accused the Research Office of sweeping the matter under the rug, and notified the Office that she had retained outside counsel.  *Id.*

On April 26, 2019, Plaintiff contacted Mr. Schenk once again to discuss her complaints against Dr. Svyatova.  *Id.*  Mr. Schenk replied to Plaintiff's email on April 30, and informed her that her complaints regarding intellectual property were closed but asked to set up a meeting with Plaintiff regarding other matters.  *Id.*  Later that day, Plaintiff sent Mr. Schenk yet another email detailing her dismay regarding EVMS's handling of her complaints and asked whether her attorney could be present at the next meeting.  *Id.*  Mr. Schenk responded to Plaintiff's email on May 1, 2019, reiterating that the intellectual property matter was closed, and informing her that her attorney would not be permitted to attend the meeting.  *Id.*  On May 3, 2019, Plaintiff forwarded her email communications with Mr. Schenk to her colleagues.  *Id.* at 7.

Ten days later, on May 13, 2019, Mr. Schenk issued Plaintiff a written reprimand, citing Plaintiff's continuous and inappropriate harassment of Dr. Svyatova, as well as Plaintiff's refusal to accept the outcomes of the numerous investigations conducted regarding Plaintiff's accusations. *Id.*  On June 27, 2019, pursuant to the EVMS Faculty Grievance Policy, Plaintiff filed a grievance regarding the May 13, 2019 reprimand, requesting that the reprimand "be withdrawn and [] expunged" from her record.  *Id.*  EVMS Human Resources investigated Plaintiff's grievance and dismissed it, finding no evidence to support Plaintiff's grievance.  *Id.*

Plaintiff alleged that, following May 2019, EVMS began to steer students away from her mentorship and coursework.  *Id.* at 13; Am. Compl. ¶ 24, ECF No. 9.

On August 14, 2019, Plaintiff sent an email to colleagues complaining about EVMS's treatment of her, in which she stated that "EVMS is so racist and dishonest," and accused EVMS

of violating "so many American values, norms, institutional policy, and AAMC/LCME/EEOC regulations." Mot. Summ. J. Op. 18.

On August 20, 2019, Plaintiff grieved the written reprimand with EVMS's faculty senate. *Id.* at 7. After Mr. Schenk submitted a response to Plaintiff's grievance, the faculty grievance committee conducted a hearing and concluded that Plaintiff's written reprimand was warranted. *Id.* at 7–8.

On January 15, 2020, Plaintiff submitted yet another grievance to the faculty grievance committee, this time grieving her FY 2019 Performance Evaluation ("FY 2019 Evaluation"), which Plaintiff perceived to reflect poorly on her performance.[3] *Id.* at 8. In this grievance, Plaintiff stated that she believed that her FY 2019 Evaluation reflected "bias and discrimination." *Id.* at 8. This grievance was also later denied. *Id.* at 19. On March 24, 2020, Plaintiff filed a charge of discrimination with the EEOC alleging race, sex, and national origin discrimination and retaliation. *Id.* at 8. On August 20, 2020, the EEOC issued a Dismissal and Notice of Rights, finding that, based on its investigation, the EEOC was unable to conclude that the information obtained established discrimination or retaliation as alleged by Plaintiff. *Id.*

**B.    Procedural History**

Plaintiff first filed her Complaint in this matter on November 18, 2020, in which she advanced four relevant claims against Defendant EVMS: (1) disparate treatment under Title VII, Compl. ¶¶ 26–32, ECF No. 1; (2) retaliation in violation of Title VII, *id.* ¶¶ 33–37; (3) misappropriation of Plaintiff's trade secret under the Defend Trade Secrets Act ("DTSA"), *id.* ¶¶ 41–44; and (4) misappropriation of Plaintiff's trade secret under the Virginia Uniform Trade Secrets Act ("VUTSA"), *id.* ¶¶ 45–49.

---

[3] Notwithstanding Plaintiff's assertions to the contrary, her FY 2019 Evaluation was not entirely negative; in fact, the Evaluation praised Plaintiff for her initiative, commitment to the scientific community, and contributions to EVMS. Mot. Summ. J. Op. 19.

On February 3, 2021, Plaintiff filed an Amended Complaint. Am. Compl., ECF No. 9. Therein, Plaintiff sustained all of the previous Complaint's allegations but added new claims of disparate treatment and retaliation under § 1981. *Id.* ¶¶ 36–42.

On February 19, 2021, EVMS filed a Motion to Dismiss the Amended Complaint. Mot. Dismiss, ECF No. 13. The Court granted the Motion to Dismiss in part and denied in part, dismissing Plaintiff's Title VII disparate treatment claim after finding that had failed to exhaust her administrative remedies for the same. Mem. Op. 6 ("Mot. Dismiss Op."), ECF No. 33. The Court did not dismiss the remainder of the relevant claims.[4] *See generally id.*

On July 7, 2021, EVMS filed its Motion for Summary Judgment. Mot. Summ. J., ECF No. 31. It argued, in relevant part, as follows. First, as to the remaining § 1981 disparate treatment claim, EVMS argued that Plaintiff had not experienced any adverse action as a matter of law, and otherwise had failed to provide even circumstantial evidence that she had experienced any adverse action based on her race or gender. Mem. Law. Supp. Def's Mot. Summ. J. 22–24, ECF No. 32. Second, as to Plaintiff's retaliation claims, EVMS again contended that Plaintiff had not experienced any adverse action, and therefore could not demonstrate a causal link between any such conduct by EVMS and protected conduct, as required for a retaliation claim. *Id.* at 26–27. And, EVMS contended that Plaintiff had not engaged in any protected conduct, and therefore doubly failed to demonstrate her claim. *Id.* Finally, as to Plaintiff's trade secret claims, EVMS contended that Plaintiff could not assert ownership of any purported trade secrets because the EVMS IP Policy, which Plaintiff agreed to in her Employment Agreement, assigned all her intellectual property to EVMS. *Id.* at 27. Thus, it asked the Court to award it summary judgment as to each of these claims.

---

[4] Unlike Title VII disparate treatment claims, § 1981 disparate treatment claims need not proceed before the EEOC and therefore do not require administrative exhaustion. Mot. Dismiss Op. 6, ECF No. 33.

Plaintiff opposed EVMS's Motion for Summary Judgment. First, as to her disparate treatment claim, Plaintiff advanced two theories of adverse employment actions by EVMS: (1) EVMS's acquiescence in Dr. Svytova's purported misappropriation of Plaintiff's EDTA disclosure; and (2) EVMS's choice to remove Dr. Svyatova from Plaintiff's lab, but permitting her to take Plaintiff's research with her, thereby negatively impacting Plaintiff's ability to develop her intellectual property. Pl.'s Corrected Br. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n Mot. Summ. J.") 13–14, ECF No. 40.[5] Plaintiff also sought to circumstantially prove that these purportedly adverse actions were a result of racial and/or gender discrimination by way of comparator evidence. *Id.* at 14–15. Specifically, Plaintiff provided evidence that a white male professor, Dr. Viktor Galkin, was not subjected to the same adverse actions as Plaintiff, despite sexually harassing a student, Ms. Gallup:

> Dr. Galkin is a traditional comparator to Dr. Tang: same position, subject to the same employment policies and HR department, subject to the same leadership . . . . Ms. Gallup was actually abused by Dr. Galkin, a White, male, Russian origin and ethnicity professor at EVMS. Yet . . . instead of permitting [Ms. Gallup] to [Dr. Galkin's] research to a different lab as it did with Svyatova, EVMS required Gallup to abandon her work and start from scratch on a new project in a different lab. . . . By contrast, Dr. Tang was subjected to a witchhunt.

*Id.* at 15.[6] Accordingly, Plaintiff asked the Court to deny EVMS's Motion for Summary Judgment as to its disparate treatment claim.

Next, as to her retaliation claim, Plaintiff argued that she had engaged in protected conduct that was temporally proximate to the adverse action. *Id.* at 17. Specifically, Plaintiff argued that she began complaining of unfair treatment in May of 2019, which constituted protected conduct,

---

[5] Beyond her Opposition to EVMS's Motion for Summary Judgment, Plaintiff also identified the following theories of possible adverse employment action: "(1) she was removed [as the chair of Dr. Svyatova's] dissertation committee; (2) she received a written reprimand from EVMS; (3) she received a negative performance evaluation; [and] (4) she had students steered away from her courses and mentorship." Mot. Summ. J. Op. 11.

[6] Plaintiff also contended that, in comparison to herself, Dr. Svyatova was treated more favorably, and did not share Plaintiff's ethnicity.

and her complaints were made "just days before EVMS removed [Plaintiff] from Svyatova's dissertation committee and issued [Plaintiff] a written reprimand." *Id.* at 17. Plaintiff contended that, together, these facts established a *prima facie* case of retaliation. *Id.*

Finally, as to her trade secret claims, Plaintiff admitted that she had signed the Employment Agreement containing the IP Policy; however, she argued that *per se* ownership is not required to assert a trade secret claim. *Id.* at 23 (citing *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 177 (3d Cir. 2020); *DTM Rsch., LLC v. AT&T Corp.*, 245 F.3d 327, 331 (4th Cir. 2001)). Accordingly, she contended that the Employment Agreement did not preclude her claims of trade secret misappropriation.

On March 30, 2022, the Court issued its ruling on EVMS's Motion for Summary Judgment. *See generally* Mot. Summ. J. Op. First, as to Plaintiff's retaliation claim, the Court found that the undisputed evidence demonstrated that Plaintiff had not experienced an adverse action. *Id.* at 11–16. Accordingly, the Court awarded EVMS summary judgment as to Plaintiff's § 1981 disparate treatment claim without determining whether the undisputed facts demonstrated that EVMS's conduct was motivated by discriminatory animus. *Id.* at 16.

Second, as to Plaintiff's retaliation claims, the Court found that Plaintiff had provided evidence that she had engaged in protected conduct. *Id.* at 17–18. However, the undisputed evidence also revealed that Plaintiff had not experienced any "materially adverse action," as required for a successful retaliation claim. *Id.* at 18. Thus, the Court awarded summary judgment to EVMS as to Plaintiff's Title VII and § 1981 retaliation claims. *Id.* at 21.

Finally, the Court considered Plaintiff's trade secret claims. The Court noted that Plaintiff's theory as to the non-requirement of *per se* ownership was partly based in sound case law; however, the Court found that the terms of the Employment Agreement sufficiently distinguished the matter from those cases relied upon by Plaintiff. *Id.* at 23 (first considering

9

Plaintiff's reliance on *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 177 (3d Cir. 2020), and then likening the instant case to *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 2011 WL 2116989 (D. Haw. May 25, 2011)).  The Court found that, by virtue of agreeing to the IP Policy in her Employment Agreement, Plaintiff had assigned her EDTA invention to EVMS.  *Id.* at 23. And, because EVMS could not have misappropriated intellectual property already assigned to itself, the Court granted EVMS's Motion for Summary Judgment as to Plaintiff's trade secret claims.  *Id.* at 23–25.

On April 12, 2022, EVMS filed the instant Motion.  Mot. Att'y's Fees, ECF No. 48; Def.'s Mem. Supp. Mot. Att'y's Fees & Costs ("Mem. Supp. Mot. Att'y's Fees"), ECF No. 49.  On April 26, 2022, Plaintiff filed her Brief in Opposition to Defendant's Motion for Attorneys' Fees and Costs ("Br. Opp'n"), ECF No. 54.  Three days later, on April 29, 2022, Plaintiff appealed the judgment against her to the United States Court of Appeals for the Fourth Circuit.  Not. Appeal, ECF No. 58.  On May 2, 2022, EVMS filed its Reply Brief in Support of Motion for Attorneys' Fees & Costs ("Reply"), ECF No. 61.

The matter remained on appeal until June 26, 2025, on which date the Fourth Circuit affirmed the judgment against Plaintiff.[7]  Judgment, ECF No. 78.

On August 19, 2025, Plaintiff filed a Notice of Supplemental Authority and Appellate Mediation Regarding Defendant's Motions for Attorneys' Fees ("Not. Supp. Auth."), ECF No. 80. There, Plaintiff alerted the Court of the Supreme Court's 2024 decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), which was issued after the parties completed briefing on the instant motion.  EVMS filed its Response to Plaintiff's Notice of Supplemental Authority ("Resp. Not.

---

[7] The taking of an appeal divests a district court of jurisdiction over the matter.  *E.g.*, *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam); *In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1190 (4th Cir. 1991).  Accordingly, while the Fourth Circuit considered Plaintiff's appeal, the Court was prohibited from considering the instant Motion.

Supp. Auth."), ECF No. 81, on September 20, 2025, arguing that *Muldrow* does not impact its entitlement to attorneys' fees.[8]

## II. STANDARD OF REVIEW

**A.    Standard for Awarding Attorneys' Fees to Prevailing Defendants in § 1981 and Title VII Actions**

"As a general matter, a litigant must pay its own attorneys' fees in the absence of a statutory or enforceable contractual provision allowing attorneys' fees to be awarded to a prevailing party." *EEOC v. Propak Logistics, Inc.*, 746 F.3d 145, 151 (4th Cir. 2014) [hereinafter *Propak*]. Nevertheless, a court may award attorneys' fees to a defendant that has prevailed against 42 U.S.C. § 1981 claims and/or Title VII claims advanced pursuant to § 1981 and/or Title VII when, in the court's discretion, it finds that "the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) [hereinafter *Christiansburg*] (interpreting 42 U.S.C. § 2000e-5 and declaring the standard for awards of attorneys' fees to prevailing defendants in Title VII actions); *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (applying the same standard to prevailing defendants in, *inter alia*, § 1981 actions).

"[A] finding of bad faith is not required for a prevailing defendant to be awarded attorneys' fees." *Propak*, 746 F.3d. at 151. Nevertheless, such an award "is a conservative tool, to be used sparingly." *Id.*

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's

---

[8] The Court finds that *Muldrow* is of limited relevance to its analysis of the instant motion. *Muldrow* lowers the threshold for Title VII job transfer discriminatory harm claims, stating that "an employee challenging a job transfer under Title VII must show that the transfer brought about some harm with respect to an identifiable term or condition of employment, but that harm need not be significant." 601 U.S. at 346. The Court, *infra*, notes that, although none of Plaintiff's complaints against EVMS constituted adverse employment actions, these theories were not so plainly wrong as to deem her disparate treatment claim unreasonable, frivolous, or without foundation. Thus, *Muldrow* does not alter the Court's outcome here.

belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg*, 434 U.S. at 421–22.

Determining whether a plaintiff unreasonably litigated her claim such that a prevailing defendant may receive attorneys' fees is a matter committed to the sound discretion of the district court. *E.g.*, *Propak*, 746 F.3d at 151 (noting that such an award "is peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of a legal action" (citation modified)).

**B.      Attorneys' Fee Awards Under DTSA and VUTSA**

Under both the DTSA and the VUTSA, a Court may award a defendant's attorneys' fees if the plaintiff advanced a trade secret misappropriation claim in bad faith. 18 U.S.C. § 1836; Va. Code Ann. § 59.1-338.1. "Such a finding requires, at a minimum, that the plaintiff's claim had no chance of success under existing law." *Tullidge v. Bd. of Supervisors of Augusta Cnty.*, 391 S.E.2d 288, 290 (Va. 1990). In other words, a defendant's claim for attorneys' fees should not be awarded if the plaintiff's claim was based on facts that, if credited, could have substantiated its claim. *Young Design v. Teletronics Int'l, Inc.*, 38 F. App'x 994, 997 (4th Cir. 2002).

In determining whether a plaintiff advanced her claim in bad faith, courts apply an objective reasonableness standard. *Id.* However, a finding of reasonableness—or, conversely, bad faith—is committed to the discretion of the trial court. *Akira Techs., Inc. v. Conceptant, Inc.*, 773 F. App'x 122, 124–25 (4th Cir. 2019).

### III. ANALYSIS

EVMS advances two main arguments in support of the instant Motion. First, EVMS argues that Plaintiff unreasonably and frivolously litigated her disparate treatment claims. Second, EVMS

argues that Plaintiff advanced her trade secret claims in bad faith. *See generally* Mem. Supp. Mot. Att'y's Fees, ECF No. 49. Thus, EVMS asks the Court to award it the attorneys' fees it spent litigating those claims. *Id.* at 5. In response, Plaintiff contends that each of the relevant claims were reasonably grounded in evidence as well as case law. *See generally* Br. Opp'n, ECF No. 54. The Court agrees with Plaintiff, and finds that she neither unreasonably litigated her disparate treatment/retaliation claims nor advanced her trade secret claims in bad faith.[9] As such, it will deny EVMS's Motion in its entirety.

## A.    Plaintiff did not Unreasonably Litigate her Disparate Treatment Claims

EVMS first asks the Court to grant it attorneys' fees for the expense of defending against Plaintiff's disparate treatment claims under Title VII and § 1981, respectively. Mem. Supp. Mot. Att'y's Fees 5–12. As to Plaintiff's Title VII disparate treatment claim specifically, EVMS contends that Plaintiff unreasonably litigated this claim because all the allegations underlying this claim were either time-barred or unexhausted. *Id.* at 7. As to both disparate treatment claims, EVMS argues that the claims were wholly unsupported by fact, since "[t]he record demonstrates that [the purported disparate treatment] was precipitated solely by [Plaintiff's] unprofessional, incessant campaign to have EVMS punish . . . Dr. Svyatova." *Id.* at 7–12. In response, Plaintiff argues that the Court should not deem her Title VII disparate treatment claim unreasonable simply because it "took a narrow view of the scope of the allegations in the EEOC Charge." Br. Opp'n 7. Plaintiff further contends that both disparate treatment claims were based in substantial evidence. *Id.*

---

[9] The parties also exchange limited argument regarding the reasonableness of Plaintiff's pattern and practice claims. *See* Mem. Supp. Mot. Att'y's Fees 2 n.2; Br. Opp'n 6. However, because EVMS does not appear to request attorneys' fees for its defense against those claims, *see* Mem. Supp. Mot. Att'y's Fees 5; Mem. Supp. Mot. Att'y's Fees Ex. 3, ECF No. 49-3, the Court does not consider their reasonableness.

All discrimination claims advanced under Title VII are subject to an administrative exhaustion requirement.[10] "An employee challenging an employment practice of an employer in Virginia has 300 days from the last date of alleged discrimination to file a charge with the EEOC, and if the statutory period elapses between the allegedly discriminatory incident and the filing of the EEOC charge, the litigant is forever barred from Title VII relief." Mot. Dismiss Op. 4, ECF No. 33 (citing *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 619 (E.D. Va. 2011)). And, because of the administrative exhaustion requirement, the substance of a plaintiff's prior EEOC charge "defines the scope of her subsequent right to institute a civil suit." *Id.* at 5.

In her Amended Complaint, and in opposition to EVMS's Motion to Dismiss, Plaintiff alleged four theories of adverse employment action in support of her disparate treatment claim: (1) her removal as the chair of Dr. Svyatova's dissertation committee, (2) the May 13, 2019 reprimand, (3) the negative FY 2019 Evaluation, and (4) EVMS's purported diversion of students away from Plaintiff's courses and mentorship. *Id.* at 5–6.

Plaintiff filed her EEOC Charge on March 24, 2020. Charge of Discrimination ("EEOC Charge"), ECF No. 14-3; Mot. Summ. J. Op. 8. Therein, she complained that EVMS had punished her for reporting academic dishonesty and theft of her intellectual property, which was motivated by racial animus. *Id.* at 1. Specifically, she complained about her removal from Dr. Svyatova's dissertation committee, as well as the letter of reprimand she received on May 13, 2019, from EVMS. *Id.*

While considering EVMS's Motion to Dismiss, the Court found that Plaintiff's first two theories of Title VII disparate treatment—Plaintiff's removal as the chair of Dr. Svyatova's dissertation committee and the May 13, 2019 reprimand—had occurred more than three hundred

---

[10] Claims advanced pursuant to 42 U.S.C. § 1981, however, do not share such a requirement. Mot. Dismiss. Op. 6. Therefore, Plaintiff's § 1981 disparate treatment claim was not subject to any administrative exhaustion analysis. *See id.*

days before Plaintiff filed her EEOC Charge and were therefore time-barred. Mot. Dismiss Op 5. And, while the latter two theories—the negative FY 2019 Evaluation and the diversion of students from Plaintiff's courses and mentorship—were not time-barred, the Court found that they were otherwise unexhausted because Plaintiff had not advanced them in her EEOC Charge. *Id.* at 6.

These findings by the Court, however, do not mean that Plaintiff's Title VII disparate treatment claim was "frivolous, unreasonable, or without foundation" such that EVMS should recover attorneys' fees. *Christiansburg*, 434 U.S. at 421. The standards governing the scope and timeliness of EEOC charges are subject to some flexibility, and Plaintiff was within her rights to argue a favorable application of the case law to her claim. *See Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (holding that courts may consider some discrimination allegations that fall outside the 300-day period); *Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019) (holding that district courts may consider any discrimination alleged in the EEOC Charge as well as any claims "like or related" to those alleged in the EEOC Charge). The Court will not find that a claim was frivolous because of an administrative exhaustion requirement when a reasonable argument could be made that the claim was properly exhausted. Accordingly, the Court rejects this argument advanced by EVMS.

The Court also finds that both disparate treatment claims were adequately based in fact, such that neither can be considered unreasonable. *Abdelhalim v. Lewis*, 90 F.4th 265, 272 (4th Cir. 2024) (holding that district courts should not deem a claim frivolous or unreasonable if any amount of evidence—even circumstantial—supported the plaintiff's claim).

Plaintiff's disparate treatment claims were governed by an identical standard.[11] "To establish a *prima facie* disparate treatment claim under Title VII or § 1981, the plaintiff must show:

---

[11] Of course, because the Court dismissed Plaintiff's Title VII disparate treatment claim at the Motion to Dismiss stage, the Court never considered whether the undisputed evidence supported her claim. In the instant Motion, however, EVMS contends that both of Plaintiff's disparate treatment claims were unsubstantiated by the evidence.

(1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) that similarly-situated employees outside the protected class received more favorable treatment." Mot. Dismiss Op. 6 (quoting *Cepeda v. Bd. Educ. Baltimore Cty.*, 814 F. Supp. 2d 500, 510 (D. Md. 2011)). At the summary judgment stage, the parties agreed that Plaintiff could establish that she was a member of a protected class, and that she had performed her job satisfactorily. Mot. Summ. J. Op. 10. The parties vigorously disagreed, however, as to whether the undisputed facts involved any adverse employment action or proof that similarly-situated employees had received more favorable treatment. *See id.*

In its analysis of EVMS's Motion for Summary Judgment, the Court first considered whether the record demonstrated that Plaintiff had experienced an adverse employment action. *Id.* "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of employment." *Id.* at 11 (citation modified). In opposition to EVMS's Motion for Summary Judgment, Plaintiff advanced the same theories of adverse employment action that she had in opposition to the Motion to Dismiss, alongside two newly developed theories: (1) that Plaintiff had experienced an adverse employment action when EVMS had permitted Dr. Svyatova to misappropriate Plaintiff's intellectual property/EDTA disclosure; and (2) that Plaintiff had experienced an adverse employment action when EVMS removed Dr. Svyatova from Plaintiff's lab but permitted Dr. Svyatova to take Plaintiff's research with her. *Id.*

Ultimately, the Court found that none of Plaintiff's complaints against EVMS constituted adverse employment actions, since none affected the terms, conditions, or benefits of employment. *Id.* at 11–15. However, these theories were not so plainly wrong as to deem her disparate treatment

---

Mem. Supp. Mot. Att'y's Fees 8. Plaintiff also asserts that "the evidence on the Title VII disparate treatment claim was coextensive with the evidence on the Section 1983 disparate treatment claim." Br. Opp'n 7 n.3. Thus, the Court considers the evidence produced in support of the Plaintiff's Title VII disparate treatment claim in conjunction with both disparate treatment claims.

claim frivolous. All of Plaintiff's theories pointed to incidents that negatively impacted her experience of her employment with EVMS; as such, Plaintiff reasonably argued that they adversely affected her employment.

In the instant Motion, EVMS also contends that Plaintiff lacked any evidence substantiating her claim that the purported adverse employment actions by EVMS were motivated by racial animus. Mem. Supp. Mot. Att'y's Fees 7. While the Court never reached this matter in its summary judgment analysis, EVMS's argument is plainly false. In fact, Plaintiff produced evidence that another professor, Dr. Galkin, who did not share Plaintiff's protected attributes, did not experience the same treatment as Plaintiff, even after he sexually harassed a student. Br. Opp'n 9; Br. Opp'n Ex. 4 at 6, ECF No. 54-3. Admittedly, Plaintiff did not provide any direct evidence of racial discrimination; however, as identified by Plaintiff, direct evidence of discriminatory animus is rare, and the lack of such evidence is far from a basis for determining that such a claim is frivolous. Br. Opp'n 8 (citing *Cannada v. Old Dominion Brush Co., Inc.*, 2021 WL 5441506, at *4 (E.D. Va. Nov. 19, 2021).

The Court cannot say, in its discretion, that Plaintiff's disparate treatment claims were "without foundation." *Abdelhalim*, 90 F.4th at 274. Thus, it declines to award EVMS attorneys' fees for its defense against the same.

**B.    Plaintiff did not Unreasonably Litigate her Retaliation Claims**

Next, EVMS asks the Court to award it attorneys' fees for its defense against Plaintiffs retaliation claims. In support, it contends that Plaintiff should have known that her retaliation claim was frivolous after her deposition because, during the deposition, Plaintiff admitted that she had not engaged in any protected activity prior to any of the purported adverse actions. Mem. Supp. Mot. Att'y's Fees 12–13. Thus, it surmises that Plaintiff's decision to continue litigating her retaliation claim after the deposition was unreasonable. In response, Plaintiff argues that she

advanced sufficient evidence to establish an inference that she had engaged in protected conduct. Br. Opp'n 11–12. The Court agrees with Plaintiff and will deny EVMS's Motion as to Plaintiff's retaliation claims.

Plaintiff advanced retaliation claims under Title VII and § 1981, both of which comprise three elements: (1) protected activity; (2) adverse action; and (3) that "a causal connection existed between the protected activity and the asserted adverse action." Mot. Summ. J. Op. 16 (citation modified).

At the summary judgment stage, Plaintiff argued that she had engaged in protected activity by lodging at least seven complaints about unfair treatment from May 2, 2019, to August 14, 2019. *Id.* at 17 n.10, 17–18. All of the communications complained of unfair treatment. *Id.* However, only the last of these complaints—an email sent on August 14, 2019—expressly mentioned unlawful discrimination. *Id.* at 18. The Court found that only this last complaint constituted protected conduct. *Id.* Thus, in considering the remainder of the retaliation elements, the Court only considered the purported adverse actions by EVMS that followed the August 14, 2019 email: (1) her negative FY 2019 Evaluation; (2) EVMS's denial of her August 20, 2019 grievance to the faculty senate; and (3) EVMS's denial of her grievance of her FY 2019 Evaluation. *Id.* at 19. The Court found that none of these three instances constituted sufficiently adverse action to amount to retaliation. *Id.* at 18–20. As such, the Court awarded summary judgment to EVMS.

In the instant Motion, EVMS contends that Plaintiff admitted in her deposition that "she never complained of race, sex, or national origin discrimination" prior to the three theories of adverse action that the Court analyzed in its consideration of its Motion for Summary Judgment. Mem. Supp. Mot. Att'y's Fees 13.

EVMS's argument is misleading for two reasons: first, in her deposition, Plaintiff did not specifically say that she never complained of discriminatory treatment. In fact, EVMS's support

for this assertion points only to quotes from Plaintiff's deposition in which she clarifies that, while her complaints did not expressly use the "magic words of discrimination and retaliation," their content clearly demonstrated such a complaint. Tr. Amy H. Tang 549:10–21, ECF No. 32-2 ("It's inferred because she rated me—the top Asian female faculty in her department, gave me the worst score, and then she gave the white male who have nothing a excellent, outstanding score. That is the definition of racism. I don't need to use that inflammatory term.").

Second, beyond the content of Plaintiff's deposition, the undisputed facts before the Court on EVMS's Motion for Summary Judgment demonstrated that Plaintiff did, in fact, complain of race discrimination prior to the three theories of adverse action analyzed by the Court by way of the August 14, 2019 email. Mot. Summ. J. Op. 17–18. This is precisely what the Court concluded in its Memorandum Opinion on EVMS's Motion for Summary Judgment. *Id.*

The Court declines to find that Plaintiff's retaliation claims were frivolous based solely on EVMS's construction of her statements during the deposition, particularly since the contested portion of the retaliation claim was otherwise founded in undisputed evidence. Thus, the Court will deny EVMS's Motion as to Plaintiff's retaliation claims.

## C.    Plaintiff did not Advance her Trade Secret Claims in Bad Faith

Finally, Plaintiff asks the Court to award it attorneys' fees for its defense against Plaintiff's trade secret claims. Mem. Supp. Mot. Att'y's Fees 14. In support, it contends that Plaintiff's trade secret claims were clearly foreclosed by Plaintiff's Employment Agreement with EVMS, which clearly assigned to EVMS all of Plaintiff's intellectual property created during the course of her employment. *Id.* at 16. In response, Plaintiff argues that, notwithstanding the terms of the Employment Agreement, she had advanced the trade secret claims pursuant to a cognizable claim

that *per se* ownership of a trade secret claim is not a prerequisite of a misappropriation claim.[12] Br. Opp'n 20.  The Court agrees with Plaintiff that her claims were advanced pursuant to a cognizable claim and therefore cannot say that she litigated in bad faith.  As such, it will deny EVMS's Motion as to Plaintiff's trade secret claims.

Unlike Title VII and § 1981 claims, the Court may only award attorneys' fees to a prevailing defendant in a trade secret misappropriation claim when the Court finds that the plaintiff litigated the matter in objective bad faith.  18 U.S.C. § 1836; Va. Code Ann. § 59.1-338.1.

EVMS's argument rises and falls on its argument that Plaintiff's claims were foreclosed by the Employment Agreement.  Mem. Supp. Mot. Att'y's Fees 16–17.  To its credit, the Court came to just this conclusion in its consideration of EVMS's Motion for Summary Judgment.  Mot. Summ. J. Op. 21–25.  Nevertheless, the Court finds that Plaintiff reasonably argued for an extension of the law in support of her trade secret claim.  In her opposition to EVMS's Motion for Summary Judgment, Plaintiff pointed to *dicta* from the United States Courts of Appeals for the Fourth and Third Circuits, both of which supported her assertion that *per se* ownership is not a strict prerequisite to a trade secret misappropriation claim.  Mot. Summ. J. Op. 22 (analyzing *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 177 (3d Cir. 2020); *DTM Rsch., LLC v. AT&T Corp.*, 245 F.3d 327, 331 (4th Cir. 2001)).  Ultimately, the Court rejected Plaintiff's theory, finding that the facts underlying those cases relied upon by Plaintiff were factually distinct from those at bar.  *Id.* at 22–25.  However, the Court declines to find here that, by arguing for an extension of

---

[12] Plaintiff also argues that she provided evidence that EVMS had reassigned the intellectual property rights to her EDTA disclosure to her.  Br. Opp'n 16–20.  However, as Plaintiff admits, Plaintiff did not actually advance this claim during the pendency of the action.  *Id.* at 16 n.6.  Accordingly, the Court declines to consider this argument here.

the law, Plaintiff advanced her claim in bad faith.  As such, the Court will deny EVMS's Motion

as to Plaintiff's trade secret claims.[13]

## IV. CONCLUSION

Therefore, for the foregoing reasons, EVMS's Motion for Attorneys' Fees will be denied.

An appropriate Order shall issue.

Date:  September 23, 2025                          /s/ _____
Richmond, Virginia                          Roderick C. Young
                                            United States District Judge

---

[13] EVMS advances two requests that the Court does not reach.  First, EVMS asks the Court to award it attorneys' fees for its defense against Plaintiff's trade secret claims pursuant to the Court's inherent sanctioning authority.  Mem. Supp. Mot. Att'y's Fees 15.  Indeed, the Court may award attorneys' fees to a party when it finds that the opposing party engaged in bad faith conduct.  *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44–46 (1991).  However, because the Court has already determined that Plaintiff did not litigate her trade secret claims in bad faith, it likewise declines to issue sanctions based on EVMS's argument.

Second, EVMS asks the Court to permit it to recover its costs under Federal Rule of Civil Procedure 54(d). Mem. Supp. Mot. Att'y's Fees 23–25.  However, it appears to the Court that EVMS has already so recovered.  Bill of Costs, ECF No. 65.  Therefore, this request is denied as moot.